In Re The BOARD OF COUNTY COM-
MISSIONERS OF the COUNTY OF
SAN MIGUEL, The Coalition of Con-
cerned San Miguel County Homeowners,
Hans (Henson) Jones, The Wilson Mesa
Homeowners Association, and Ptarmi-
gan Ranch Owners Association, Plain-
tiffs and Petitioners

v.

The COLORADO PUBLIC UTILITIES
COMMISSION; Commissioner Gregory
E. Sopkin; Commissioner Polly Page;
Commissioner Carl Miller; Former
Commissioner Jim Dyer; Tri–State Gen-
eration and Transmission Association,
Inc.; and The Board Of County Com-
missioners of the County of Montrose,
Defendants and Respondents.

No. 06SA213.

Supreme Court of Colorado,
En Banc.

April 30, 2007.

As Modified on Denial of Rehearing
May 21, 2007.*

* Justice Martinez and Justice Bender would grant the Petition; Justice Eid does not participate.

John W. Suthers, Attorney General, David A. Beckett, Assistant Attorney General, Business and Licensing Section, Denver, Colorado, Attorneys for Defendants and Respondents Colorado Public Utilities Commission, Commissioner Gregory E. Sopkin, Commissioner Polly Page, Commissioner Carl Miller, and Former Commissioner Jim Dyer.

Steven J. Zwick, San Miguel County Attorney, Rebekah S. King, San Miguel Assistant County Attorney, Telluride, Colorado, Attorneys for Plaintiff and Petitioner The Board of County Commissioners of the County of San Miguel.

Arnold & Porter LLP, David S. Neslin, Harris D. Sherman, Denver, Colorado, Attorneys for Plaintiffs and Petitioners Coalition of Concerned San Miguel County Homeowners, Hans (Henson) Jones, The Wilson Mesa Homeowners Association, and Ptarmigan Ranch Owners Association.

No appearance by or on behalf of Defendants and Respondents Tri–State Generation and Transmission Association, Inc. and The Board of County Commissioners of the County of Montrose.

Justice HOBBS delivered the Opinion of the Court.

In this original proceeding under C.A.R. 21, we determine whether the Colorado Public Utilities Commission ("PUC" or "Commission"), pursuant to sections 40–6–113(6) and 40–6–115, C.R.S. (2006), must include in the record of its proceedings advisory memoranda received from its staff and considered by the Commissioners in the deliberative phase of their proceedings.[1]

PUC employees include among their numbers two groups of agency experts—a testimonial staff and an advisory staff. Performing different functions in PUC proceedings, these two groups operate independently and in isolation of each other. The testimonial staff is active in making presentations to the Commission during the evidentiary phase of proceedings, in which parties present evidence. In the deliberative phase, the advisory staff assists the PUC Commissioners in analyzing the record made during the evidentiary phase, and arraying the various choices the Commissioners have before them in making their decision.

Advisory memoranda contain an analysis of the record made prior to the Commissioners' deliberation; these memoranda also contain staff recommendations to the Commissioners. Members of the advisory staff are not decision-makers. The PUC Commissioners are the decision-makers, and they may accept or reject all or any portion of the advisory staff's analysis and/or recommendations.

After they complete their deliberations in a public proceeding, the PUC Commissioners enter a final written decision or order under section 40–6–109(3), C.R.S. (2006). A party may appeal the final written decision or order to the district court pursuant to section 40–6–115.

In the case before us, the district court held that the advisory staff's memoranda must always be included in the records of PUC's proceedings, under section 40–6–113(6). But, the PUC's long-standing practice is not to include advisory memoranda in

---

1. The Commission presented the following issue for review of the district court's judgment in this original proceeding:

 Whether the district court's order requiring the Public Utilities Commission to add the memoranda prepared by its advisors to the record on judicial review, which memoranda were not evidence submitted in the Public Utilities Commission's adjudicatory proceeding, violated the controlling statutes (namely sections 40–6–113(6) and 40–6–115, C.R.S. (2006)) and constitutes an abuse of discretion for which immediate review is appropriate.

the record it certifies to district courts upon judicial review.

The parties who filed this judicial review proceeding in the District Court for San Miguel County contend, and the district court agreed, that the PUC violates section 40–6–113(6) when it fails to include advisory memoranda in the records of PUC proceedings. These parties contended in the district court, as well as here, that the advisory memoranda in this case must be made part of the record because:

> they were obtained at the PUC's initiative and considered by the PUC in rendering the decision under review; ... the memoranda are not privileged because their contents were publicly disclosed; and .... the memoranda are relevant because they contain factual findings and recommendations contrary to the PUC's positions on the merits.

Pls. and Petrs.'s Resp. 8.

██ We hold that section 40–6–113(6) does not generally require the PUC to include advisory memoranda in the records of PUC decisions and orders. However, when the staff injects new factual information into the proceedings through an advisory memorandum read at the open meeting deliberation of the Commissioners, and this factual information has not otherwise been made part of the record, the PUC must include such factual information in the agency record for purposes of judicial review under section 40–6–115.

Accordingly, we discharge the rule in part and make it absolute in part. We return this case to the district court, with directions that it (1) conduct an in camera review of the advisory memoranda in this case, (2) determine whether the staff injected new factual information during the open meeting deliberative phase of this proceeding and whether such factual information has not been made part of the record, and (3) include in the section 40–6–113(6) record any such new factual information for purposes of section 40–6–115 judicial review of the PUC's decision. So that the district court may conduct this in camera review, we order the PUC to transmit the advisory memoranda in this proceeding to the district court under seal.

## I.

Tri–State Generation and Transmission Association, Inc. ("Tri–State") operates the Nucla–Telluride transmission line, which transports power from a station in Montrose County to a substation in San Miguel County. Tri–State has proposed replacing the existing 69 kV transmission line with a more powerful 115kV transmission line in order to better serve a growing regional population.

The San Miguel County Commissioners ("the County") and the Coalition of Concerned San Miguel County Homeowners ("the Homeowners' Coalition") do not dispute that this upgraded service is needed. At issue is how the new transmission line will be installed.

When Tri–State proposed upgrading the line, the County imposed conditions on the upgrade. The County required Tri–State to construct designated portions underground because of aesthetic and environmental concerns. Tri–State appealed these conditions to the PUC pursuant to section 29–20–108(5), C.R.S. (2006). The Homeowners' Coalition joined as a party to the PUC proceeding in opposition to Tri–State's appeal.[2] The PUC appointed its testimonial staff to intervene in the proceeding as a party. See 4 Colo.Code Regs. § 723–1–1007(a) & (b) (2006).

The PUC followed its usual procedures. In September and October of 2003, it took public comment and held evidentiary hearings. The parties filed direct, answer, and rebuttal testimony in accordance with procedural orders the PUC issued. After the evidentiary hearings, the parties filed statements of position. This concluded the "formal hearing" phase during which evidence is gathered and the record is compiled, including pleadings, testimony, and exhibits presented during the hearing phase.

---

**2.** They have since been joined by Hans (Henson) Jones, the Wilson Mesa Homeowners Association, and the Ptarmigan Ranch Owners Association. Together, the plaintiffs/petitioners will be referred to as the "County and Homeowners."

In January 2004, the Commission conducted a meeting to deliberate Tri–State's appeal. Pursuant to Colorado's Open Meetings Law, the deliberative meeting was open to the public. *See* §§ 24–6–401 to –402, C.R.S. (2006). The Commission also broadcast this meeting over the Internet.

During this deliberative meeting, one or more members of the advisory staff read from portions of advisory memoranda prepared for the Commissioners. The advisory memoranda were not otherwise made available to the public.

The PUC Commissioners conducted their deliberations and voted in public at the meeting. The PUC later issued its decision in writing, pursuant to section 40–6–109(3).[3] In its decision, the PUC directed Tri–State to construct the transmission line underground, as the County wished, if the cost estimates for underground construction were less than or equal to the amount required for overhead construction. The PUC also directed Tri–State to (1) obtain cost estimates for underground and overhead construction and (2) install the transmission lines underground if San Miguel County, homeowners, and/or others were willing to pay the cost difference.

The PUC's decision provided that the County and Homeowners' Coalition could return for resolution of disagreement over cost estimates after Tri–State gathered and reported its estimated costs to the PUC. Subsequently, the County and Homeowners' Coalition asserted that Tri–State's cost estimates were generally incomplete and that the cost estimates for an underground transmission line ought to be based on a method known as "direct burial." Tri–State had based its underground cost estimates on a more expensive technique known as "duct bank," which it claimed to be superior for maintenance reasons.

The PUC held a two-day evidentiary hearing on the cost issue and conducted its public deliberative meeting to decide this issue. The advisory staff made a presentation that included reading from parts of an advisory memorandum submitted to the PUC Com-

missioners, but the memorandum was not otherwise made public. The PUC broadcasted the public meeting over the Internet.

During the public meeting, advisory staff discussed with the PUC Commissioners whether Tri–State should be allowed to use the cost of duct bank construction, as opposed to direct burial, for its estimate of the cost of an underground transmission line. In the course of the discussion, an advisory staff member stated that she had independently investigated a direct burial project that had taken place in New Zealand and which Tri–State claimed had failed.

The staff's investigation revealed that the New Zealand project involved a different type of cable than Tri–State would use and that the project had failed for reasons other than direct burial. The advisory staff recommended direct burial, with Tri–State absorbing the cost.

The PUC Commissioners deliberated in public, voted orally, and subsequently issued a written decision. They agreed with the County and Homeowners that Tri–State's cost estimates were incomplete, but rejected the staff's recommendation that Tri–State make underground cost projections based on direct burial. The Commission reasoned that Tri–State would have to maintain the transmission line; thus, if the company preferred to use the more expensive duct bank technique, they could do so and they should also be entitled to use the duct bank technique for cost estimates. In response to the Homeowners' argument that cost estimates should be based on direct burial, the Commission stated,

> The cost estimate shall be based upon a type of construction that will be used. We have left it to the discretion of Tri–State whether to use duct bank construction or direct burial, again because we traditionally do not interfere with utility engineering practices, and leave it to the utility to determine what expenditures are prudent in light of maintenance, safety, and reliability concerns.

---

3. The PUC made slight modifications to this written decision, Decision No. CO4–0093, due to Decision No. CO4–0257, based on requests for rehearing, reargument, or reconsideration filed by the parties pursuant to section 40–6–114, C.R.S. (2006).

The County and Homeowners' Coalition requested rehearing, reargument, or reconsideration of this decision, but the Commission affirmed.[4] The County and Homeowners' Coalition, joined by Hans (Henson) Jones, the Wilson Mesa Homeowners Association, and the Ptarmigan Ranch Owners Association (together "County and Homeowners") filed a complaint and an application for judicial review in the District Court for San Miguel County.

The Commission certified its record of proceedings to the district court. As described by the PUC, the record includes the transcript of formal evidentiary hearings, the pleadings, the Commission's written decisions, and "all other papers on file in, or in connection with, said proceedings." The PUC did not include the advisory memoranda its staff prepared and provided to the PUC Commissioners for their use in the deliberative phase of the proceedings.

The County and the Homeowners sent a written request to the PUC, asking that it supplement the record with all advisory memoranda in the proceedings. The PUC refused, asserting that section 40–6–113(6) does not mandate the inclusion of advisory memoranda. The County and Homeowners filed a motion with the district court, requesting that it order the PUC to supplement the record with the advisory memoranda.

The district court ordered the inclusion of all advisory memoranda prepared in the proceedings for the PUC Commissioners, relying on section 40–6–113(6). It did not order the advisory memoranda to be submitted under seal, so that the court could determine in camera whether the memoranda included new factual information injected into the deliberative phase of the proceedings that should be included in the record.

The PUC did not provide the advisory memoranda to the district court. Instead, it filed this C.A.R. 21 action. We issued our rule to show cause.

## II.

We hold that section 40–6–113(6) does not generally require the PUC to include advisory memoranda in the records of PUC decisions and orders. However, when the staff injects new factual information into the proceedings through an advisory memorandum read at the open meeting deliberations of the Commissioners, and this factual information has not otherwise been made part of the record, the PUC must include such factual information in the agency record for purposes of judicial review under section 40–6–115.

### A.

### Standard of Review

C.A.R. 21 is the basis for our discretionary review of district court interlocutory orders. In our sole discretion, we may grant relief in an original proceeding only "when no other adequate remedy, including relief available by appeal ... is available." C.A.R. 21(a).

Here, we exercise our discretion for the purpose of considering an issue of significant public importance we have not yet decided. *See CLPF–Parkridge One, L.P. v. Harwell Invs., Inc.,* 105 P.3d 658, 660 (Colo.2005); *City & County of Denver v. Dist. Court,* 939 P.2d 1353, 1361 (Colo.1997).

 We review the district court's ruling of law de novo. *Dempsey v. People,* 117 P.3d 800, 807 (Colo.2005). We may consider and defer to an agency's interpretation of its own enabling statute and regulations the agency has promulgated, but we are not bound by the agency's interpretation. *Williams v. Kunau,* 147 P.3d 33, 36 (Colo. 2006); *Lobato v. ICAO,* 105 P.3d 220, 223 (Colo.2005).

In prior decisions, we have deferred to the PUC's statutory interpretation because of the considerable authority and expert role the Colorado Constitution and statutes assign to it. *See, e.g., City of Fort Morgan v. Colo. Pub. Utils. Comm'n,* No. 06SA118, slip op. at 13, —— P.3d ——, 2007 WL 1175823 (Colo. Apr. 23, 2007); *Trans Shuttle, Inc. v.*

---

**4.** A request for rehearing, reargument, or reconsideration is essentially a request to the Commission for review of its own decision. *See* § 40–6–114.

*Pub. Utils. Comm'n of Colo.*, 89 P.3d 398, 403 (Colo.2004); *Powell v. Pub. Utils. Comm'n*, 956 P.2d 608, 613 (Colo.1998).

Under the rules of statutory construction, legislative inaction to change this court's interpretation of a statute is presumed to be ratification of that interpretation. *Grissom v. People*, 115 P.3d 1280, 1285 (Colo.2005); *Hendricks v. People*, 10 P.3d 1231, 1239 (Colo.2000); *Mason v. People*, 932 P.2d 1377, 1380 (Colo.1997). A similar presumption should be accorded to the PUC in the case before us, because the General Assembly has chosen to invest the PUC with authority to "conduct its proceedings in such manner as will best conduce the proper dispatch of business and the ends of justice." § 40–6–101(1), C.R.S. (2006). To "conduce" is "to bring about" desired ends "with reference to a desirable result." *Webster's Third New International Dictionary*, 473 (1st ed.2002). Under its long-standing interpretation of the authority granted to it by this statute, the PUC utilizes advisory memoranda of expert staff in the deliberative phase of the proceedings to assist in analyzing the evidence and arraying decision-making choices the Commissioners have before them. These memoranda typically rely on evidence already in the record and do not introduce new facts at the deliberative phase. Thus, the PUC interprets 40–6–113(6) as not requiring the inclusion of advisory memoranda in the record.

Nonetheless, deference would not be appropriate if the PUC's statutory interpretation would defeat the General Assembly's intent in enacting the statute or is contrary to the plain meaning of the statute. *See Colo. Dep't of Revenue v. Garner*, 66 P.3d 106, 109 (Colo.2003); *AviComm, Inc. v. Colo. Pub. Utils. Comm'n*, 955 P.2d 1023, 1031 (Colo.1998).

Here, because the interpretation made by the PUC is not one that involves use of its technical expertise, for example ratemaking, we do not owe a high degree of deference to the PUC's interpretation; nonetheless, we defer to it as a reasonable construction of the pertinent agency statutes and implementing rules, guidance, and determinations. *Washington County Bd. of Equalization v. Petron Dev. Co.*, 109 P.3d 146, 150 (Colo.2005).

**B.**

**Construction of Section 40–6–113(6)**

In this case we must construe section 40–6–113(6), which provides:

> In case of an action *to review an order or decision of the commission,* a transcript of such testimony or the affidavits or other evidence under the shortened or informal procedure, *together with* all exhibits or copies thereof introduced and *all information secured by the commission on its own initiative and considered by it in rendering its order or decision,* and the pleadings, record, and proceedings in the case, shall constitute the record of the commission.

(Emphasis added).

The PUC has a long-standing interpretation of this statutory section and its procedural rules, according to which it does not include in the record advisory staff memoranda prepared for the PUC Commissioners' use in the deliberative phase when certifying a record to the district court for judicial review under section 40–6–115.

Section 1504(a) of the PUC procedural rules states, "The record of a proceeding shall include all information introduced by the parties, as provided in § 24–4–105(14), C.R.S., and all information set out in § 40–6–113(6), C.R.S." Section 24–4–105(14), C.R.S. (2006) of Colorado's Administrative Procedure Act ("APA") is the statute that describes the record for review of an agency decision.[5] Section 40–6–113(6) contains language that includes more information in the record than the APA, specifically the lan-

---

5. Colorado's administrative law statute states:
 For the purpose of a decision by an agency . . . the record shall include: All pleadings, applications, evidence, exhibits, and other papers presented or considered, matters officially no-
 ticed, rulings upon exceptions, any findings of fact and conclusions of law proposed by any party, and any written brief filed.
 § 24–4–105(14).

guage at issue in this case pertaining to "all information secured by the commission on its own initiative and considered by it in rendering its order or decision." When a specific provision in the PUC's statute differs from, or is additive to an APA provision, the specific provision shall be given effect. § 40–6–101(1) (providing that "where there is a specific statutory provision in this title applying to the commission, such specific statutory provision shall control").

Advisory memoranda are the work product of a particular group of expert PUC employees, whose job it is to analyze the record made in the formal phase of the PUC proceedings and to make recommendations to the Commissioners for use in their deliberations. No part of an advisory memorandum is binding on the Commissioners. The Commissioners are free to accept or reject any part or all of an advisory memorandum.

██ What the Commissioners must do is issue a written decision or order pursuant to section 40–6–109(3). On review, a court examines the PUC's written decision in light of the record of the PUC's proceeding. Section 40–6–115(3) governs judicial review of a PUC decision, and limits review to: (1) whether the PUC has regularly pursued its authority, including whether the decision violates any right of the petitioner under the United States or Colorado Constitutions; and (2) whether the decision is just, reasonable, and in accordance with the evidence. § 40–6–115(3); *Durango Transp., Inc. v. Colo. Pub. Utils. Comm'n,* 122 P.3d 244, 247 (Colo.2005).

██ A reviewing court may not substitute its own judgment for that of the PUC; the court's role is to determine whether there is substantial evidence in the record to support the PUC's decision. *See Powell,* 956 P.2d at 613. The PUC's factual findings supported by substantial evidence are "final and are not subject to review." *Durango Transp.,* 122 P.3d at 247; § 40–6–115(2), C.R.S. (2006).

██ Section 40–6–115(3), setting forth the standard of review, and section 40–6–113(6), setting forth what must be included in the record, function in tandem. In the context of the statutory term "in accordance

with the evidence" contained in section 40–6–115(3), the phrase of section 40–6–113(6) "all information *secured by the commission on its own initiative* and considered by it in rendering its order or decision" (emphasis added) includes factual information developed by the PUC in the exercise of its investigatory function. *See Colo. Energy Advocacy Office v. Pub. Serv. Co. of Colo.,* 704 P.2d 298, 304 (Colo.1985)("Section 40–6–113(6) acknowledges that the PUC may rely on evidence other than that obtained at a formal hearing, thus allowing the PUC to consider a broader range of information in making an adjudicatory decision than that allowed by strict application of the APA.").

### C.

### Application to This Case

The district court's construction of section 40–6–113(6) would treat the advisory staff as if it functions as a fact-gathering administrative body offering testimonial presentations at the deliberative phase of the proceedings. The district court reasoned that when the PUC Commissioners receive deliberative memoranda from their advisory staff they are "securing" information on their "own initiative" that must be included in the record.

However, the advisory staff to the Commissioners acts as an integral and essential part of the decision-making function of the PUC in the deliberative phase of the proceedings. The PUC's adoption of such a procedure is within the authority the General Assembly gave it to "conduct its proceedings in such manner as will best conduce the proper dispatch of business and the ends of justice." § 40–6–101(1). Accordingly, the Commissioners rely on the advice of technically trained staff to ensure that their deliberations and decisions are well-informed, fair, and reflect the agency's experience and expertise in making both quasi-legislative and quasi-judicial decisions in the course of regulating public utilities.

By statute, the Commissioners depend upon a staff director, assistants, and employees to carry out and implement the policies, procedures, and decisions of the Commissioners. §§ 40–2–103, –104, C.R.S. (2006).

Section 40–2–104 includes as staff, "experts, engineers, statisticians, accountants, investigative personnel, clerks, and other employees." Our cases recognize that the expertise of the PUC is a function of the PUC Commissioners aided by their expert staff. "We adhere to the proposition that the legislature contemplated that the reviewing court, since it does not have the aid of a staff and the expertise of the PUC, should not undertake to duplicate the evaluation and judgment process followed by the PUC in arriving at its decision." *Atchison, Topeka & Santa Fe Ry. Co. v. Pub. Utils. Comm'n*, 194 Colo. 263, 267, 572 P.2d 138, 141 (1977); *see also Pub. Serv. Co. of Colo. v. Trigen–Nations Energy Co.*, 982 P.2d 316, 322 (Colo.1999).

More recently we said,

Our examination of whether the PUC's decision was just and reasonable under the circumstances likewise recognizes the considerable discretion Colorado law has vested in this agency. The PUC's expertise and extensive staff support render it much better able to assess impacts to the public interest from a utility action than the courts.

*City of Boulder*, 996 P.2d at 1270.

Thus, the purpose of the experts of the advisory staff is to help the Commissioners sort through their decision-making options in the deliberative phase of the proceedings, based upon the record made in the formal evidentiary phase. As a matter of general practice, the advisory staff's role does not include securing additional factual information for the Commissioners. Factual presentation to the Commissioners is ordinarily accomplished by the parties and the PUC's testimonial staff before deliberations commence. Often the factual information is presented to PUC hearing officers who make factual findings that the Commissioners may adopt in making their written decisions and orders. The record and exhibits of a proceeding conducted by a PUC hearing officer or administrative law judge, together with a written recommendation containing findings of fact and conclusions of law, must be included in the PUC's record pursuant to sections 40–2–104(3), 40–6–101(1), and 40–6–109(2), C.R.S. (2006).

Our primary task in interpreting a statute is to give effect to the intent of the General Assembly. *City of Florence v. Pepper*, 145 P.3d 654, 657 (Colo.2006); *see also AviComm*, 955 P.2d at 1031. The General Assembly's intent is ascertained by examining the statute's language. *People v. Cross*, 127 P.3d 71, 73 (Colo.2006). When we look to Colorado's Public Utilities law as a whole, we should give it a consistent, harmonious, and sensible reading. *AviComm*, 955 P.2d at 1031.

Here, the language of section 40–6–113(6) supports the Commission's interpretation that advisory memoranda are not required to be included in the record on judicial review. The key words in the phrase we construe are "all information secured ... on its own initiative." To secure is to "come into secure possession of," or to "acquire as the result of effort." *Webster's Third New International Dictionary*, 2053 (1st ed.2002). Section 40–6–113(6)'s reference to information that the Commission secures on its own initiative implies circumstances where the PUC exercises its investigatory authority to develop and introduce facts into the proceedings that the parties have not introduced. We have said,

Section 40–6–113(6) acknowledges that the PUC may rely on evidence other than that obtained at a formal hearing, thus allowing the PUC to consider a broader range of information in making an adjudicatory decision than that allowed by strict application of the [Administrative Procedure Act]. This court has recognized that the PUC at times may have a duty to investigate on its own.

*Colo. Energy Advocacy Office*, 704 P.2d at 304.

The General Assembly has assigned many responsibilities to the PUC. *See Atchison, Topeka & Santa Fe*, 194 Colo. at 266, 572 P.2d at 140. The PUC's findings of fact are final, and "may not be set aside if they are supported by substantial evidence in the record." *Powell*, 956 P.2d at 608; § 40–6–115(2). Even though a reviewing court is not entitled to examine advisory memoranda as part of the record under section 40–6–113(6), it has all of the factual information that the

PUC Commissioners considered, and may therefore determine whether a PUC decision was supported by substantial evidence in the record. In the context of the statutory design of the public utilities law, section 40–6–113(6) incorporates into the record all factual information the reviewing court considers under section 40–6–115(3) in determining whether the decision is in accordance with the evidence in the proceedings.

The district court does not have the statutory authority to reverse the PUC's decision on the grounds that the Commissioners disagreed with staff recommendations, and the district court must give deference to the expertise of the PUC in deciding what weight to give to the facts and the expert testimony contained in the record. §§ 40–6–115(2), –115(3). Yet, the County and Homeowners apparently desire to have the record supplemented by advisory staff memoranda in order to show that the Commissioners rejected a staff recommendation, as if somehow the Commissioners acted arbitrarily and capriciously in doing so.

The staff recommended that Tri-State estimate underground transmission line costs using the direct burial technique, but the Commission ultimately decided that since Tri–State would maintain the lines, it was entitled to estimate costs using the duct bank technique. The gauge of the lawfulness of a PUC decision is not what the advisory staff has to say, but what the Commissioners do and say in their written decision, based on the record.

We recognize that federal courts routinely require advisory memoranda from staff to be included in the record, but the federal court decisions do not address the design of the Colorado PUC statutes as a whole or section 40–6–113(6) in particular. Nor do these decisions involve a history of statutory interpretation and practice by the PUC in construing and applying its enabling authority. When we review the proper construction of statutes de novo, we may accord deference to the agency's construction of its statute. *Lobato,* 105 P.3d at 223.

The County and Homeowners cite federal cases that set forth policy reasons for including agency advisory memoranda in the judicial record. For example, in *National Courier Association v. Board of Governors of the Federal Reserve System,* the District of Columbia Circuit Court of Appeals held that intra-agency memoranda containing "internal recommendations, staff analysis and work product and legal opinions" are considered to be evidence within the federal APA's statutory definition because "[p]rivate parties and reviewing courts alike have a strong interest in fully knowing the basis and circumstances of an agency's decision." 516 F.2d 1229, 1241 (D.C.Cir.1975). The court also held that memoranda remain subject to any privilege that an agency claims to protect its interest in nondisclosure.

The federal decisions turn on the federal statutory definition of the record on review. 5 U.S.C. § 706(2)(a) (2006); 28 U.S.C. § 2112(b) (2006) ("The record to be filed in the court of appeals in such a proceeding shall consist of the order sought to be reviewed or enforced, the findings or report on which it is based, and the pleadings, evidence, and proceedings before the agency...").

Under Colorado's Public Utilities Code, however, the General Assembly has enacted a specific provision, section 40–6–113(6), that identifies what must be contained in the record. We give effect to the policy reasons employed by the PUC in excluding from the record advisory memoranda provided to the Commissioners by its advisory staff in the deliberative phase. The record of a PUC decision or order, as defined by section 40–6–113(6), does not generally require inclusion of advisory staff memoranda presented to the PUC Commissioners for deliberative purposes, because the advisory memoranda are the work product of a particular group of expert PUC employees, whose job it is to analyze the record made in the formal phase of the PUC proceedings and to make recommendations to the Commissioners for use in their deliberations.

In this context, the Commissioners and their staff function as one in sorting through the deliberative choices presented by the record in the exercise of PUC authority. Section 40–6–115(3), setting forth the standard

of review, and section 40–6–113(6), setting forth what must be included in the record, function in tandem. All evidence must be included in the record. Advisory memoranda are not evidence.

In its definition of what constitutes evidence that must be included in the record, the PUC has determined that all matters introduced into the pre-deliberative formal stage of the proceedings by the parties and staff are part of the record. The record also includes facts as to which the PUC takes administrative notice, as provided in its regulations:

> The Commission may take administrative notice of general or undisputed technical or scientific facts, state and federal constitutions, statutes, rules, regulations, tariffs, price lists, time schedules, rate schedules, annual reports, documents in its files, matters of common knowledge, matters within the expertise of the Commission, and facts capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *Any fact* to be so noticed shall be specified in the record, and copies of all documents relating thereto shall be provided to all parties and the Commission, unless they are readily available from the parties, or they are voluminous. Every party shall be afforded an opportunity to controvert *the fact* to be so noticed.

4 Colo.Code Regs. § 723–1–1501(c)(2006) (emphasis added). However, the PUC does not consider the advisory staff memoranda to be evidence that must be included in the record.

This has been the traditional procedure and statutory interpretation of the PUC over a long period of time, a procedure and interpretation well known to practitioners and parties that appear before the PUC on a regular basis. The General Assembly has had ample opportunity to change the statute to require the PUC to include advisory memoranda in the record, and has not chosen to do so. To the contrary, the General Assembly has consigned to the PUC the authority to "conduct its proceedings in such manner as will best conduce the proper dispatch of

business and the ends of justice." § 40–6–101(1).

Having an expert advisory staff that assists the PUC Commissioners in the deliberative phase is a reasonable choice in the conduct of PUC business. Deliberations necessarily involve give and take that postulates the various decisional choices that could be made, with the ultimate goal of producing a decision a majority of the Commissioners can agree upon. The Commissioners conduct their deliberations in public, pursuant to the Open Meetings Law, sections 24–6–401 to – 402. This makes the process accessible and visible, serving the interest of public accountability, but what the Commissioners say in deliberations and what the staff says to them is not evidence that the statute requires to be in the record.

The thought processes of PUC decisionmakers cannot be used as evidence to impeach a PUC decision or order. The use of advisory staff in deliberations is part of this thought process. Utilizing a position of the advisory staff to provide grounds for impeaching the Commissioners' decision would introduce evidence that is irrelevant as a matter of law, and would thus serve no purpose beyond chilling the deliberative process. *See Gilpin County Bd. of Equalization v. Russell*, 941 P.2d 257, 264–65 (Colo.1997) (noting that "thought processes or motivations of an administrator are irrelevant in judicial determinations as to whether an agency order is reasonably sustained by appropriate findings and conclusions") (internal citations omitted).

Accordingly, we defer to the PUC's longstanding procedure of not including advisory memoranda in the record of PUC proceedings. *See City of Boulder*, 996 P.2d at 1274–75. Deference is especially appropriate in this case, because the PUC Commissioners and the advisory staff act with a common purpose in the deliberative phase, in that the staff assists the Commissioners in reaching a just and reasonable decision grounded in the evidence of the proceeding and informed by the PUC's expertise, as contemplated by section 40–6–115(3).

■ Nonetheless, when the staff injects new factual information into the proceedings

through an advisory memorandum read at the open meeting deliberations of the Commissioners, and this factual information has not been made a part of the record, such information must be made part of the record under section 40–6–113(6). In a case such as the one before us, the district court has authority to require the PUC to submit advisory memoranda under seal for in camera inspection, so that the court may determine whether new factual information has been introduced during the deliberative phase of the proceedings that should be included in the record.

Here, the County and Homeowners allege that an advisory staff member stated during the public deliberative meeting that she had conducted independent Internet investigation concerning a New Zealand direct burial transmission line project. They claim that she injected this factual information into the open public meeting of the Commissioners by reading from the advisory memoranda. If so, such factual information would be within the section 40–6–113(6) mandate for inclusion of evidence in the record.

The PUC asserts that the Commissioners did not consider in their decision the New Zealand information that the advisory staff had obtained after the formal hearings had been concluded. However, whether the factual information the staff obtained is of great or little importance to the Commissioners, it belongs in the record pursuant to section 40–6–113(6) if the above-mentioned allegations of the County and Homeowners are true.

### III.

Accordingly, we discharge the rule in part and make it absolute in part. We return this case to the district court, with directions that it (1) conduct an in camera review of the advisory memoranda in this case, (2) determine whether the staff injected new factual information during the open meeting deliberative phase of this proceeding and whether such factual information has not been made part of the record, and (3) include in the section 40–6–113(6) record any such factual information for purposes of section 40–6–115 judicial review of the PUC's decision. So that the district court may conduct this in camera review, we order the PUC to transmit the advisory memoranda in this proceeding to the district court under seal.

Justice MARTINEZ dissents, and Justice BENDER joins in the dissent.

Justice EID does not participate.

Justice MARTINEZ, dissenting.

I respectfully dissent. The majority holds that "all information secured by the commission on its own initiative and considered by it in rendering its order or decision" as stated in section 40–6–113(6), C.R.S. (2006), is limited to "new factual information" injected by staff "into the proceedings through an advisory memorandum read at the open meeting deliberations of the Commissioners." Maj. op. at 1086, 1088, 1093–94. In my view, the majority makes seven errors in its statutory interpretation. First, the majority affords greater deference to the PUC's historical interpretation than warranted by the circumstances. Second, the majority limits "all information" in the statute to factual information disclosed by staff during open meeting deliberations, thus contradicting the General Assembly's intent as expressed through the statute's plain language. Third, the majority relies on an incomplete analysis of section 40–6–115(3), C.R.S. (2006), to justify its interpretation. Fourth, the majority's interpretation conflicts with our previous case law interpreting this statute. Fifth, the majority's interpretation is inconsistent with the PUC's own regulations as to what information should be included in the record on review. Sixth, the majority applies the wrong common law privilege to support its interpretation. Seventh, the majority places the burden on the party opposing the PUC to seek in camera review of memoranda without knowing whether it contains information pertinent to the record.

Before beginning its purported analysis of the statutory language, the majority signals its intent to afford deference to the PUC's historical interpretation of the statute because of the PUC's "considerable authority and expert role." Maj. op. at 1088. The majority then builds its analysis around this deference. Maj. op. at 1092, 1092–1094.

However, such deference is not warranted when the issue involved is strictly legal, does not implicate the special expertise of the agency, or when the agency's interpretation conflicts with the plain language of the statute—all circumstances that appear in this case. The deference doctrine "should be utilized reluctantly where the issue is strictly a legal one that is within the conventional competence of the courts." *Arapahoe County Pub. Airport Auth. v. Centennial Express Airlines,* 956 P.2d 587, 592 (Colo.1998). Administrative interpretations are most useful to the court when the subject involves technical questions of fact uniquely within an agency's expertise and experience. *Id.* In this case, the interpretation of section 40–6–113(6) is a purely legal issue that does not implicate the special technical expertise of the PUC, so considerable deference is not warranted. It is also inconsistent, indeed ironic, to defer to the PUC's interpretation of a statute due to the PUC's expertise when that expertise is based on the experience and advice of staff whose analysis and recommendations the PUC specifically seeks to exclude from the record. Maj. op. at 1088, 1090–91.

The majority also states that deference is appropriate because it is the PUC's "long-standing practice," "long-standing interpretation," "long-standing procedure," and "traditional procedure ... over a long period of time" to exclude advisory memoranda from the record. Maj. op. at 1085–86, 1089, 1093. Thus, the majority concludes, we should accept the PUC's interpretation because "the General Assembly has had ample opportunity to change the statute to require the PUC to include advisory memoranda in the record, and has not chosen to do so." Maj. op. at 1093. However, there is a vast difference between assuming legislative ratification when the General Assembly chooses not to respond to a published, widely distributed court decision, and assuming ratification because the legislature has not responded to an unofficial office practice that has not been codified in any statute, regulation, or even mentioned in a published court opinion. In fact, the PUC certifies its record of proceedings with a cover letter to the reviewing court stating that the enclosed record includes "all other papers on file in, or in connection with, said proceedings." Maj. op. at 1088. Only if you are one of the insiders "that appear before the PUC on a regular basis," maj. op. at 1093, are you likely to know that this *really* means "all other papers in connection with said proceedings *except* the advisory memoranda."

According to the majority, we should further presume legislative ratification because the General Assembly gave the PUC the authority to "conduct its proceedings in such manner as will best conduce the proper dispatch of business and the ends of justice." Maj. op. at 1089, 1090–91, 1093. It is quite a stretch to assume that this language authorizes the PUC to disregard the plain language of a statute in favor of an unwritten office practice. Taken to its extreme, this argument would allow the PUC to disregard or override any statute related to its proceedings that it felt necessary to the "proper dispatch of business and the ends of justice." Obviously, the General Assembly only meant to give the PUC authority to conduct its proceedings in a manner consistent with the other applicable statutes.

Most importantly, the majority errs in deferring to the PUC's historical interpretation because it is inconsistent with the statute's plain language. Courts are not bound by an agency interpretation that is contrary to the plain meaning of a statute. *People v. Rockwell,* 125 P.3d 410, 420 (Colo.2005). If the legislature has addressed the precise question at issue, we construe the statute accordingly and afford no deference to the agency's interpretation. *City of Boulder v. Colo. Pub. Utils. Comm'n,* 996 P.2d 1270, 1277 (Colo. 2000). Here, the question before us can be resolved by reading the plain language of the statute, and the PUC's interpretation is not consistent with this plain language. Thus, the majority should afford no deference to the PUC's interpretation. To the contrary, the majority actually begins its analysis of the statute with the PUC's conclusion of what it means, and then works backward, altering the plain language of the statute to accord with the PUC's interpretation. Maj. op. at 1089–90, 1091, 1092–93.

Section 40–6–113(6) states in relevant part that the record shall include "all information secured by the commission on its own initiative and considered by it in rendering its order or decision." Considering the plain language, this would, as the majority stated, include any new factual information injected into the deliberative phase of the proceedings. Maj. op. at 1086, 1088, 1093–94. However, instead of reading the language of the statute as it is written, the majority adds the word "factual" before "information." Maj. op. at 1086, 1088, 1090, 1091–92, 1093–94. The language of the statute simply does not say that. The General Assembly limited "all" information with the phrases "secured by the commission on its own initiative" and "considered by it in rendering its order or decision." If the General Assembly had wanted to further limit "all" information to "factual information," it certainly could have done so. But it did not. The majority's interpretation contradicts the intent of the General Assembly as expressed through the plain language of the statute, and disregards the doctrine that we do not add statutory words that contravene the legislature's obvious intent. *People v. Cross,* 127 P.3d 71, 73 (Colo.2006).

The addition of the word "factual" is not inconsequential. As I explain later, "factual" information is only a subset of the plain language of the statute—"information" is a broader term that properly encompasses the analysis and recommendations of the advisory staff. In qualifying "information" with "factual," the majority recognizes that in order to align the language of the statute with the PUC's historical interpretation, it is necessary to add language to the statute.

The majority's analysis as to why the statute should be limited to "factual" information is based on an incomplete analysis of section 40–6–115(3). The majority concludes that "a reviewing court is not entitled to examine advisory memoranda as part of the record under section 40–6–113(6)." Maj. op. at 1091–92. The majority supports this conclusion by noting that if the reviewing court has all of the *factual* information that the PUC

considered, it may determine under section 40–6–115(3) whether a PUC decision was supported by substantial evidence in the record. *Id.* However, the majority only analyzes the part of section 40–6–115(3) that supports this limited interpretation of section 40–6–113(6). Section 40–6–115(3) states that judicial review:

> shall not extend further than to determine whether the PUC has regularly pursued its authority, . . ., *and whether the decision of the PUC is just and reasonable,* and whether the PUC's conclusions are in accordance with the evidence.

(Emphasis added). The majority disregards the portion of section 40–6–115(3) that states the reviewing court must also determine whether the decision of the PUC is "just and reasonable," not only whether it is supported by evidence in the record. The analysis and recommendations of the advisory staff, in addition to factual information, may be pertinent to the determination of whether the PUC's decision was "just and reasonable."[1]

The majority's interpretation of the statute also contradicts our previous case law. We have specifically recognized that if the PUC relies on "evidence in its files . . . and data gathered through its own investigation" in support of an order, that information should be included in the record. *Consol. Freightways Corp. of Del. v. Pub. Utils. Comm'n,* 158 Colo. 239, 253, 406 P.2d 83, 90 (1965). Both "evidence in its files" and "data gathered through its own investigation" may refer to the analysis and recommendations of advisory staff in addition to factual information. Thus, the majority's conclusion that the language of the statute only refers to factual information is inconsistent with our decision in *Consolidated Freightways.* Maj. op. at 1086, 1088, 1090, 1091–92, 1093–94.

The majority emphasizes the word "fact" in 4 Colo.Code Regs., § 723–1–1501(c)(2006), in support of its conclusion that "information" in section 40–6–113(6) is limited to factual information. Maj. op. at 1093. This reliance is misplaced. First, this administrative notice regulation does not limit the statu-

1. This is true even though the PUC's findings of fact are not subject to review except under limit-

ed circumstances. § 40–6–115(2), C.R.S. (2006).

tory requirements of section 40–6–113(6), so even if the regulation limited the PUC's administrative notice to facts, it would have no impact on the PUC's requirements to place other information in the record in accordance with section 40–6–113(6). Second, a complete reading of this regulation shows that the PUC has the authority to notice information much broader than facts, and in doing so, that broader information must be included in the record. The regulation states that, in addition to such facts as statutes, rules, and tariffs, the PUC may take administrative notice of "documents in its files" and "matters within the expertise of the Commission." Such information is clearly broader than facts, despite the PUC's short-hand labeling of the entire category of information listed in the regulation as "facts." Thus, when the PUC takes administrative notice of "documents in its files" and "matters within the expertise of the Commission," that information (even if not specifically a fact) should be included in the record under the regulation.

Further, this PUC regulation does not describe a formal process for taking administrative notice of information. It is reasonable to conclude that if the PUC considers some piece of information, such as "documents in its files" or "matters within the expertise of the Commission" as part of a proceeding, they are thereby taking "administrative notice" of it, and that information must then be included in the record under the regulation.[2] Therefore, this PUC regulation contradicts the majority's conclusion that only factual information must be included in the record.

The majority further limits "information" by stating that only new factual information injected by staff through an advisory memorandum read at the open meeting deliberations must be included in the record. Maj. op. at 1086, 1088, 1093–94. This was the method by which the "new factual information" in this particular case became evident to others besides the PUC, but that circumstance should not improperly limit the majority's interpretation of section 40–6–113(6). Even if "information" in the statute were

properly limited to "factual information," further qualifying "information" with a public disclosure requirement sanctions an outrageous result: the PUC could gather facts through its investigative capacity, consider those facts as part of its decision, but then decide to exclude those facts from the record simply by choosing not to have staff disclose them during the open meeting deliberations.

This disclosure requirement reaches far beyond the plain language of the statute. Section 40–6–113(6) states that "all information secured by the commission on its own initiative and considered by it in rendering its order or decision" be included in the record. The majority acknowledges at one point in the opinion that the statute "includes factual information developed by the PUC in the exercise of its investigatory function." Maj. op. at 1090. However, the majority apparently discards this reading of the statute, without explanation, in favor of adding a disclosure requirement that would essentially change the word "considered" in this statute to "publicly disclosed." This is contrary to the General Assembly's intent as expressed through the plain language of the statute. "Consider" means "to fix the mind on, with a view to careful examination; to examine; to inspect." *Black's Law Dictionary* 306 (6th ed.1990). There is no element of public disclosure indicated by the word "consider."

The majority's disclosure requirement is also directly contradictory to our decision in *Colorado Energy* that states: "section 40–6–113(6), while recognizing that the PUC may obtain information on its own investigation, requires that the PUC place all information under consideration in the public record and provide an opportunity for the parties to comment thereon." *Colo. Energy Advocacy Office v. Pub. Serv. Co. of Colo.*, 704 P.2d 298, 304 (Colo.1985). The majority, while recognizing *Colorado Energy* key holding at one point in the opinion, maj. op. at 1090, does not then explain why it ultimately rejects it in favor of an additional disclosure requirement.

Moreover, the disclosure requirement creates the anomalous situation where a fact

---

**2.** As the majority stated, it does not matter whether such information was of great or little importance to the Commissioners. Maj. op. at 1094.

within the PUC's files considered during the proceeding would become part of the record through the administrative notice regulation, but a fact gathered through the PUC's investigative powers may not.

Finally, the majority's rationale for excluding the analysis and recommendations of the advisory staff is based in part on an erroneous application of Colorado's common law privilege doctrine.[3] The majority explains that the advisory memoranda should not be included in the record because the "thought processes of PUC decision-makers cannot be used as evidence to impeach a PUC decision or order. The use of advisory staff in deliberations is part of this thought process." Maj. op. at 1093. Although I recognize the mental process privilege may apply in some instances to protect the PUC, placing the analysis and recommendations of the advisory staff in the record does not involve probing the mental processes of the PUC or its commissioners. First, although the analysis and recommendations of the advisory staff may in some instances help to explain the PUC's ultimate decision, a requirement to place the advisory staff's analysis and recommendations in the record for judicial review is not equivalent to a requirement that the PUC or its commissioners provide an explanation of their decision after the decision has been made. There is no discovery request involving the manner in which the PUC arrived at its decision, as in *City of Colorado Springs v. District Court,* 184 Colo. 177, 519 P.2d 325 (1974) and *Public Utilities Commission v. District Court,* 163 Colo. 462, 431 P.2d 773 (1967), and the PUC commissioners have not been called as witnesses in a subsequent proceeding to explain or justify their

decision, as in *Gilpin County Board of Equalization v. Russell,* 941 P.2d 257 (Colo. 1997). Thus, the mental process privilege does not bar the advisory staff's analysis and recommendations from inclusion in the record.[4]

Instead of the statutory interpretation that the majority constructs in order to defer to the PUC's historical interpretation, I would follow our primary obligation to interpret the statute consistent with its plain language. Construing the language in question according to the rules of grammar and common usage, the record should include all information the PUC acquires while acting independently of outside influence or control and takes into account in making its decision. *See generally,* § 2–4–101, C.R.S. (2006); *Klinger v. Adams County Sch. Dist. No. 50,* 130 P.3d 1027, 1031 (Colo.2006); *Merriam–Webster's Collegiate Dictionary* 265–66, 644, 1123 (11th ed.2004). Accordingly, I would find that the record for judicial review certified by the PUC should include any new information that is incorporated into advisory memoranda. This would include any new factual information in the memoranda, whether or not such information was disclosed by staff during the open meeting deliberations. In addition to new factual information, I would find that the analysis and recommendations of the PUC's expert advisory staff that are in the advisory memoranda are required to be included in the record under the plain language of section 40–6–113(6), subject to the deliberative process privilege.[5] Analysis and recommendations are created by the PUC acting on its own initiative. Analysis involves the breakdown and examination of data and facts. The anal-

---

**3.** The majority's interpretation is also based on deference to the PUC's historical interpretation, which, as I have already discussed, is inconsistent with the statute's plain language.

**4.** As I explain later, I do believe that a different privilege, the common law deliberative process privilege, may apply if affirmatively asserted by the PUC.

**5.** The common law deliberative process privilege is based on the belief that public disclosure of certain communications would deter the open exchange of opinions and recommendations between government officials. *City of Colo. Springs*

*v. White,* 967 P.2d 1042, 1050–51 (Colo.1998). This privilege has been limited by necessary implication by Colorado's Open Meetings Law. §§ 24–6–401 to –402, C.R.S. (2006). Applying this privilege to the instant case, I would find that the PUC may be allowed to claim the deliberative process privilege to protect certain portions of the analysis and recommendations in the advisory memoranda under the circumstances and the procedures this court set forth in *White.* However, the privilege would not apply to any factual information, or to the analysis and recommendations within the advisory memoranda that were revealed during the public deliberative meetings.

ysis performed by the expert PUC advisory staff and the recommendations that result from that analysis may be new and unique information. For example, the advisory memoranda may take data presented by one party and meld it with data presented by a second party to reach a conclusion that neither of the parties reached independently. This new information is considered by the PUC when the advisory memoranda are circulated to the commissioners. Thus, the analysis and recommendations contained in the advisory memoranda are "information secured by the commission on its own initiative and considered by it in rendering its order or decision" and should be included in the record under the plain language of the statute.

This conclusion is supported by the fact that section 40–6–113(6) requires that "a transcript of such testimony" and the "proceedings in the case" must be included in the record. "Such testimony" is testimony from the "proceeding." § 40–6–113(1)–(2), C.R.S. (2006). A proceeding includes all acts and events between commencement of a case and the entry of judgment. *Black's Law Dictionary* 1241 (8th ed.2004). The public deliberative meetings of the PUC, which take place after the formal hearings have closed but before the entry of a decision in a case, are part of the "proceedings in the case." Therefore, testimony from the deliberative portion of the proceeding must be included in the record for judicial review under the language of section 40–6–113(6). This would include the analysis and recommendations of the PUC's expert advisory staff set forth in the advisory memoranda that are disclosed during the deliberative portion of the proceeding.

This interpretation is also supported by reading the language of section 40–6–113(6) in tandem with the court's duties under section 40–6–115(3) to determine whether the PUC has regularly pursued its authority, whether the decision of the PUC is just and reasonable, and whether the PUC's conclusions are in accordance with the evidence. We have previously stated that in order to

fulfill its duties, a reviewing court should have the same information available to it as the agency did in making its decision. *Geer v. Stathopulos,* 135 Colo. 146, 154, 309 P.2d 606, 610–11 (1957) (noting that a court reviewing the action of an administrative agency should be placed in the same position as such agency, and therefore the agency's knowledge of a fact that is acted upon should become part of the record). *See also Pub. Citizen v. Heckler,* 653 F.Supp. 1229, 1236 (D.D.C.1987) ("[i]f a court is to review an agency's action fairly, it should have before it neither more nor less information than did the agency when it made its decision") (*quoting Walter O. Boswell Memorial Hosp. v. Heckler,* 749 F.2d 788, 792 (D.C.Cir.1984)).[6] Thus, the information before the reviewing court should include expert staff analysis and recommendations considered by the agency's decision makers.

As the District of Columbia Circuit Court of Appeals has aptly stated:

The Government takes the position that internal staff memoranda are never part of the record. . . . We think a fuller analysis is called for. Private parties and reviewing courts alike have a strong interest in fully knowing the basis and circumstances of an agency's decision. The process by which the decision has been reached is often mysterious enough without the agency's maintaining unnecessary secrecy. . . . The proper approach, therefore, would appear to be to consider any document that might have influenced the agency's decision to be "evidence" within the statutory definition, but subject to any privilege that the agency properly claims as protecting its interest in non-disclosure.

*Nat'l Courier Ass'n v. Bd. of Governors of the Fed. Reserve Sys.,* 516 F.2d 1229, 1241 (D.C.Cir.1975). In addition to placing all of the same information before the reviewing court, this approach appropriately places the burden on the PUC to justify excluding information that otherwise should be in the record under the statute's plain language. The majority's interpretation requires the opposing

---

**6.** In simply deferring to the PUC's historical interpretation of the statute, the majority too easily dismisses the federal courts' policy reasons for including staff advisory memoranda in the record.

party to blindly take legal action seeking in camera review of memoranda that may or may not contain information pertinent to the record. Placing the burden on the party which has no access to the information in the first place is neither reasonable nor practical.

In sum, I would find that all new information within the advisory memoranda is necessarily part of the record under section 40–6–113(6). In addition to new factual information, whether or not disclosed by staff during the open deliberation meetings, this would include the analysis and recommendations of the PUC advisory staff in the advisory memoranda, subject to any valid deliberative pro-

cess privilege claim by the PUC of those portions of the analysis and recommendations that were not revealed during the public deliberative meetings. Therefore, I respectfully dissent.

I am authorized to state that Justice BENDER joins in this dissent.