The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
July 25, 2019

## 2019COA114

**No. 18CA1148, *Information Network v. Colo Mined Land* — Energy and Environment — Mining — Mined Land Reclamation Act**

In this case, a division of the court of appeals concludes for the first time that under the Colorado Mined Land Reclamation Act, temporary cessation is a factual status, rather than a legal one. Therefore, the Colorado Mined Land Reclamation Board lacked the legal authority to approve a further period of cessation when the mine had not produced any minerals for more than the ten-year statutory limitation in section 34-32-103(6)(a)(III), C.R.S. 2018.

COLORADO COURT OF APPEALS                                    2019COA114

Court of Appeals No. 18CA1148
City and County of Denver District Court No. 17CV33475
Honorable Michael A. Martinez, Judge

Information Network for Responsible Mining, Earthworks, and Sheep Mountain
Alliance,

Plaintiffs-Appellants,

v.

Colorado Mined Land Reclamation Board,

Defendant-Appellee.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE TOW
Richman and Harris, JJ., concur

Announced July 25, 2019

Travis Stills, Durango, Colorado; Roger Flynn, Jeffrey C. Parsons, Lyons,
Colorado, for Plaintiffs-Appellants

Philip J. Weiser, Attorney General, Charles J. Kooyman, Senior Assistant
Attorney General, Denver, Colorado, for Defendant-Appellee

¶ 1     Information Network for Responsible Mining, Earthworks, and Sheep Mountain Alliance (collectively, the objectors) appeal the district court's judgment, affirming the Colorado Mined Land Reclamation Board (the Board) order granting the request of Piñon Ridge Mining, LLC for approval of a second period of temporary cessation.[1]  We reverse.

## I.    Background

¶ 2     In November 1999, Piñon Ridge Mining was issued a permit for a uranium mining operation known as the Van 4 Shaft (the site), releasing the company's predecessor from its permit.  The site last produced ore in 1989.  In March 2014, the Division of Reclamation, Mining, and Safety (the Division) approved an initial period of temporary cessation for the site, with an effective date of June 13, 2012.

¶ 3     In May 2017, the Division received a request for approval of a second period of temporary cessation for the site.  The objectors filed objections to this request.  The Board held a hearing on the matter.  During the hearing, a representative of Piñon Ridge Mining

---

[1] Additional parties filed objections during the proceedings before the Board but did not join this appeal.

testified that minerals had not been extracted since it had taken over the site because the depressed market price of uranium made production unprofitable. The representative also testified that the operator had explored one other avenue for extraction.

¶ 4 The Board ultimately granted the request for approval of a second period of temporary cessation. The district court affirmed the Board's order. The objectors now appeal the Board's decision.

## II. Analysis

¶ 5 The objectors assert that the district court erred in affirming the Board's order, which, the objectors argue, ignored the plain language of the Colorado Mined Land Reclamation Act (MLRA) when approving a second period of temporary cessation. We agree.

### A. Standard of Review

¶ 6 The Board is a state agency governed by the State Administrative Procedure Act, sections 24-4-101 to -108, C.R.S. 2018. In reviewing the Board's actions, we stand in the same position as the district court. *See Haney v. Colo. Dep't of Revenue*, 2015 COA 125, ¶ 14. We must set aside an agency action that is

(I) Arbitrary or capricious;
(II) A denial of statutory right;

(III)   Contrary to constitutional right, power, privilege, or immunity;

(IV)   In excess of statutory jurisdiction, authority, purposes, or limitations;

(V)   Not in accord with the procedures or procedural limitations of this article 4 or as otherwise required by law;

(VI)   An abuse or clearly unwarranted exercise of discretion;

(VII)   Based upon findings of fact that are clearly erroneous on the whole record;

(VIII) Unsupported by substantial evidence when the record is considered as a whole; or

(IX)   Otherwise contrary to law, including failing to comply with section 24-4-104(3)(a) or 24-4-105(4)(b).

§ 24-4-106(7)(b), C.R.S. 2018. "In all cases under review, the court shall determine all questions of law and interpret the statutory and constitutional provisions involved and shall apply the interpretation to the facts duly found or established." § 24-4-106(7)(d).

## B.   Applicable Law

¶ 7    The MLRA was enacted to encourage and foster mining of the state's natural resources and subsequent reclamation of the land affected by such extraction. § 34-32-102(1), C.R.S. 2018. Under the MLRA, a mining permit may continue in effect even if the mining operation "temporarily cease[s] production for one hundred eighty days or more," provided the operator files a "Notice of

3

Temporary Cessation" with the Office of Mined Land Reclamation. §

34-32-103(6)(a)(II), C.R.S. 2018. Production must be resumed

within five years of temporary cessation or the operator must "file[]

a report requesting an extension of the period of temporary

cessation." § 34-32-103(6)(a)(III). But "[i]n no case shall temporary

cessation of production be continued for more than ten years

without terminating the operation and fully complying with the

reclamation requirements of this article." *Id.*

¶ 8    Temporary cessation is defined as "those limited periods of

non-production as specified according to Section 1.13." Div. of

Reclamation, Mining & Safety Rule 1.1(53), 2 Code Colo. Regs.

407-1. According to Section 1.13, indications that temporary

cessation has occurred include

> (1)  there are no personnel working at the site for one hundred eighty (180) consecutive days;
> (2)  there are only security personnel at the site;
> (3)  there are personnel other than security people at the site, but they are engaged in activities which can be described as maintenance or housekeeping, or related activity;
> (4)  there are personnel at the site, but they are engaged in activities which are not significantly moving the site towards

4

completion of the mining operation. The Board will judge these activities in relation to the size of the operation, the nature of the ore body and other facts;

(5) there is no sale or processing of material or movement of stockpiled material;

(6) [t]here is only minimal or token excavation of mineral or other material; or

(7) mine development has ceased and mining has not recommenced.

*Id.* at Rule 1.13.2. In contrast, indications that temporary cessation has not occurred are that the extraction of minerals is complete but final reclamation-related activities are occurring, or a permit has been issued for the site but mining operations have yet to begin. *Id.* at Rule 1.13.3.

### C. Temporary Cessation is a Factual Status

¶ 9 As a preliminary matter, we conclude that the district court erred in affirming the Board's order, which treated temporary cessation as a legal status, rather than a factual one, and "reset" the effective date of that status.

¶ 10 During the Board's hearing, it was disclosed that in 2011 or 2012, the Division realized that a large number of mines had not been in production for quite some time. Yet, they had been treated as being in intermittent status, rather than in a status of temporary

5

cessation.[2]  The Division consequently informed the licensees that these mines would be "reset" to temporary cessation status.[3]  At the hearing, the Division representative explained to the Board,

> So this – like I said, the letter went out in 2011 [or 2012] requiring everybody to get their environmental protection plans, reclaim, and/or address this temporary cessation status.
>
> At that time we were in front of the Board.  We had objections to some folks going into temporary cessation from this intermittent status, but we felt it was appropriate to sort of reset the bar because this thing had been languishing for quite a while, and we felt the fresh start was appropriate, especially given the changes to the law, the designated mining status.

The Division made clear to these licensees, however, that they should not expect approval of a second period of temporary cessation.

¶ 11    In approving the request for a second period of temporary cessation here, the Board clearly considered temporary cessation to

---

[2] As described at the hearing, intermittent status is provided to operations that conduct mining-related activities seasonally, likely because the site is a high-elevation site that can only be accessed in the summer.

[3] It is not entirely clear from the hearing whether the Board informed these mines of the status issue in 2011 or 2012.

be a legal status that only commenced in 2012 after the bar was "reset," and thus a second approval period was available. In other words, the Board felt that a mine was not in a status of "temporary cessation" until the request for recognition of that status had been approved by the Division or Board. This was error. Under the statute and rules, temporary cessation is a factual status that cannot be "reset."

¶ 12     Although "[w]e may consider and defer to an agency's interpretation of its own enabling statute and regulations the agency has promulgated, . . . we are not bound by the agency's interpretation." *Bd. of Cty. Comm'rs v. Colo. Pub. Utilities Comm'n*, 157 P.3d 1083, 1088 (Colo. 2007). "In reviewing an agency's construction of a statute, we rely on basic rules of statutory construction." *Smith v. Colo. Motor Vehicle Dealer Bd.*, 200 P.3d 1115, 1116 (Colo. App. 2008). Thus, we seek to give effect to the intent of the General Assembly by primarily looking at the plain language of the statute. *Id.*

¶ 13     Temporary cessation is consistently defined as a period of nonproduction, rather than a status granted to a particular mining operation only after the Division (or the Board) approves a request

7

for recognition of that status. Temporary cessation is defined by the Division as "limited periods of non-production as specified according to Section 1.13." Div. of Reclamation, Mining & Safety Rule 1.1(53), 2 Code Colo. Regs. 407-1. Under Section 1.13, "Indications of Temporary Cessation" include consideration of what type of personnel are present at the site and the sale and excavation of minerals. *Id.* at Rule 1.13.2. Neither the definition nor the referenced factors suggest that temporary cessation commences on any date other than when production ceases on the site. In other words, a mine is in temporary cessation status once 180 days have passed without production, even if the Division or the Board has not received or acted upon the required notice.

¶ 14 Temporary cessation is also discussed as a period of nonproduction within the definition of "life of the mine." *See* § 34-32-103(6)(a). The life of the mine is the period in which a mining permit is in effect. *Id.* When referencing temporary cessation, the statute requires that "[p]roduction is resumed within five years of the *date production ended*," § 34-32-103(6)(a)(III) (emphasis added).

¶ 15 Furthermore, once the notice is filed and the Division approves the initial period of temporary cessation, that period is backdated to

8

begin the initial day that production ceased. Div. of Reclamation, Mining & Safety Rule 1.13.5(1)(a), 2 Code Colo. Regs. 407-1. If the approval of the Division were a prerequisite to recognizing temporary cessation, this period would begin when the Division acted upon the notice. Therefore, the Board should have analyzed temporary cessation as a status based on the fact that the mine was not producing, rather than a status based on the legal recognition of that nonproduction in 2012.

### D. The Board Erred in Approving the Request for Another Period of Temporary Cessation

¶ 16 Because temporary cessation is a factual status, we must determine when temporary cessation truly began. As relevant to our inquiry, the Board found that

(1) the Division issued a permit for the site to the preceding operator in 1978;

(2) the site last produced ore in 1989;

(3) the Division issued a new permit for the site to the current operator in 1999;

(4) the Division accepted an environmental protection plan for the new permit on August 31, 2012; and

9

> (5) the Division approved the first period of temporary cessation for the site on March 6, 2014, with an effective date of June 13, 2012.

¶ 17    The Board's findings suggest that temporary cessation began no later than 1999.[4]  Although the Board on appeal argues that the filing of an environmental protection plan in 2012 was part of "active mining," the plan was accepted almost two months *after* the Division approved the site's request for temporary cessation status. Nor is there any indication that there were mine employees at the site preparing for the commencement of a mining operation.  *See id.* at Rule 1.13.3(2).  Rather, the status of the site falls squarely within the final indication of temporary cessation: "mine development has ceased and mining has not recommenced."  *Id.* at Rule 1.13.2(7).

¶ 18    Since the site's period of temporary cessation began no later than 1999, production had to resume by 2009 to prevent

---

[4] Although there is nothing in the statutes or the rules to suggest that corporate succession restarts the clock on temporary cessation, and thus temporary cessation may have begun as early as 1989, we need not make that determination here.  Even if temporary cessation did not begin until 1999, the Board erred in continuing to approve temporary cessation status more than ten years later.

termination of the operation under section 34-32-103(6)(a)(III).  But the site never recommenced production.  Therefore, the Board abused its discretion in approving the request for another period of temporary cessation in 2017.  Because temporary cessation of the site has continued for more than ten years, the operation must be terminated and the operator must fully comply with reclamation requirements under the MLRA.

## III.   Conclusion

¶ 19    The judgment is reversed, and the case is remanded to the district court with directions to remand to the Board for termination of the operation and compliance with the reclamation requirements as set forth in the MLRA.

JUDGE RICHMAN and JUDGE HARRIS concur.