The PEOPLE of the State of
Colorado, Petitioner,

v.

Brian CROSS, Respondent.

No. 05SC17.

Supreme Court of Colorado,
En Banc.

Jan. 17, 2006.

John W. Suthers, Attorney General, Patricia R. Van Horn, Assistant Attorney General, Appellate Division, Criminal Justice Section, Denver, for Petitioner.

David S. Kaplan, Colorado State Public Defender, Jason C. Middleton, Deputy State Public Defender, Denver, for Respondent.

HOBBS, Justice.

We granted certiorari to review the court of appeals' judgment in *People v. Cross,* 114 P.3d 1 (Colo.App.2004), on the issue of the correct jury instruction for the crime of harassment by stalking under section 18–9–111(4)(b)(III), C.R.S. (2005).[1] A jury convicted Brian M. Cross ("Cross") of harassment by stalking—credible threat, contrary to section 18–9–111(4)(b)(I), C.R.S. (2005), and harassment by stalking—serious emotional distress, contrary to section 18–9–111(4)(b)(III), C.R.S. (2005).[2] The court of appeals set aside both convictions and remanded for a new trial on issues that are not before us on certiorari review.

The issue before us is whether the court of appeals was correct in ruling that the "knowingly" mens rea of section 18–9–111(4)(b)(III) applies to the statutory phrase "in a manner that would cause a reasonable person to suffer serious emotional distress and does cause that person ... to suffer serious emotional distress." The prosecution contends that "knowingly" is limited to the statutory language that immediately follows it: "[r]epeatedly follows, approaches, contacts, places under surveillance, or makes any form of communication with that person." We agree.

Contrary to the court of appeals' reformulation of the trial court's jury instruction, the

---

1. We took this case on the following prosecution issue:

 Whether a conviction for harassment by stalking—serious emotional distress requires the jury to find that the defendant was "aware that his conduct was practically certain to cause, and did cause serious emotional distress."

2. The statute has not changed in material respect from the time of defendant's alleged crime in 2001, so we cite to the 2005 volume of the statutes.

General Assembly intended not to impose a requirement under section 18–9–111(4)(b)(III) that a defendant was aware his or her conduct would cause a reasonable person to suffer serious emotional distress. The trial court's instruction correctly submitted the charge to the jury. Accordingly, we disapprove of the jury instruction the court of appeals required to be given on retrial, and reverse its judgment on this point.

## I.

The court of appeals held that there was sufficient evidence for the jury to find that Cross stalked the female victim at a shopping mall where she worked in a phone sales-kiosk. Cross went to the shopping center almost daily and spent several hours sitting on benches near the kiosk and circling it. It became apparent to other mall employees and the victim that Cross targeted the victim. Feeling threatened and suffering from serious emotional distress, the victim attempted to use different doors to enter and leave the mall, had her husband drive her to and pick her up from work, and asked her supervisor to modify her work schedule. None of this altered the ways in which Cross pursued her.

On one occasion, Cross approached the kiosk, tapped on it, smiled or smirked at the victim, and watched her for approximately two-and-one-half hours. That night, the victim attended a church service with her family. Cross appeared and watched her until her husband arrived; then he left but reappeared at her work place the next two days. The victim complained to the police. They arrested Cross on a parole violation for another stalking case and ultimately charged him with stalking in this case.

The jury convicted Cross of harassment by stalking—credible threat, contrary to section 18–9–111(4)(b)(I), C.R.S. (2001), and harassment by stalking—serious emotional distress, contrary to section 18–9–111(4)(b)(III), C.R.S. (2001). The trial court sentenced him to twenty-four years in the Department of Corrections and five years mandatory parole.

The court of appeals reversed both convictions and remanded for retrial because "the trial court erred in admitting evidence of [another stalking] conviction and instructing the jury that it was an element of harassment by stalking, section 18–9–111(4)(b)(I), (III), a class 4 felony." *Cross*, 114 P.3d at 4.

The trial court and the court of appeals differed over the correct jury instruction for the harassment by stalking—serious emotional distress offense under section 18–9–111(4)(b)(III). For the reasons stated in this opinion, we hold that the trial court's jury instruction correctly follows the statutory wording and accords with the General Assembly's intent.

## II.

Contrary to the court of appeals' reformulation of the trial court's jury instruction, the General Assembly intended not to impose a requirement under section 18–9–111(4)(b)(III) that a defendant was aware his conduct would cause a reasonable person to suffer serious emotional distress.

### A.

### Standard of Review

■ We review issues of statutory construction de novo. *CLPF–Parkridge One, L.P. v. Harwell Invs., Inc.*, 105 P.3d 658, 661 (Colo.2005); *Colo. Dep't of Labor & Employment v. Esser*, 30 P.3d 189, 194 (Colo.2001). Our job is to effectuate the General Assembly's intent. *CLPF–Parkridge One*, 105 P.3d at 660. We look first to the plain text of a statute, reject interpretations that render words or phrases superfluous, and harmonize potentially conflicting provisions, if possible. *Id.; Denver Publ'g Co. v. Bd. of County Comm'rs*, 121 P.3d 190, 195 (Colo.2005). We do not add or subtract statutory words that contravene the legislature's obvious intent. *Esser*, 30 P.3d at 195.

■ Often the best guide to legislative intent is the context in which the statutory provisions appear and any accompanying statement of legislative policy. *People v. McKinney*, 99 P.3d 1038, 1043 (Colo.2004); *Esser*, 30 P.3d at 195; *Common Sense Alliance v. Davidson*, 995 P.2d 748, 755 (Colo. 2000).

We also consider the consequences of a particular construction and avoid constructions that produce illogical or absurd results. *Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist.*, 109 P.3d 585, 593 (Colo.2005); *Leonard v. McMorris*, 63 P.3d 323, 326 (Colo.2003).

The power to define criminal conduct and to establish the legal components of criminal liability is vested in the General Assembly. *Copeland v. People*, 2 P.3d 1283, 1286 (Colo.2000). The mens rea of a statute may speak to conduct, or to circumstances, or to result, or to any combination thereof, but not necessarily to all three.[3] *Id.* Ordinarily, the mental state a statute defines applies to all elements of the offense unless legislative intent to limit its application clearly appears. § 18–1–503(4), C.R.S. (2005); *People v. Coleby*, 34 P.3d 422, 424 (Colo. 2001).

Under this rule and its exception, we must carefully consider whether the legislature intended that the express or necessarily-implied culpable mental state of the offense applies only to certain elements. *Gorman v. People*, 19 P.3d 662, 667 (Colo.2000) (holding that "knowingly" mens rea for offense of contributing to delinquency of a minor does not apply to require that defendant know the victim's age); *Copeland*, 2 P.3d at 1287 (holding that "knowingly" or "recklessly" mens rea of arson offense does not require that defendant be aware of or intended the consequences of starting or maintaining the fire); *People v. Noble*, 635 P.2d 203, 210 (Colo.1981) (holding that "knowingly" mens rea of child abuse offense does not apply to require defendant's awareness that his conduct is practically certain to cause the proscribed result but, rather, applies only to defendant's general awareness of the abusive nature of the conduct in relation to the child or awareness of the circumstances of the act against the child).

In order to avoid interpreting the statute in a way that defeats legislative intent, we must give effect to the ordinary meaning of the language and read the provisions as a whole, construing each consistently and in harmony with the overall statutory design, if possible. *Whitaker v. People*, 48 P.3d 555, 558 (Colo.2002) (holding that statutory design precluded construction requiring defendant to be aware of the quantity of drugs he imported).

### B.

### History of Section 18–9–111(4)(b)(III)

Prior to 1999, the Colorado stalking statute included only "credible threat" provisions. § 18–9–111(4)(b)(I), (II), C.R.S. (2005). During its 1999 session, the General Assembly added to the statutorily defined stalking offenses the offense of harassment by stalking—serious emotional distress. § 18–9–111(4)(b)(III); *see* 1999 Colo. Sess. Laws, Ch. 215, sec. 1, at 793, 800.

Section 18–9–111(4)(b)(III), C.R.S. (2005), provides as follows:

(b) A person commits stalking if directly, or indirectly through another person, such person *knowingly*:

. . .

(III) Repeatedly follows, approaches, contacts, places under surveillance, or makes any form of communication with another person, a member of that person's immediate family, or someone with whom that person has or has had a continuing relationship *in a manner that would cause a reasonable person to suffer serious emotional distress and does cause that person,*

---

**3.** In addition to the criminal conduct and mental state, crimes often require the elements of circumstance and result:

> [T]he definitions also often require, in addition, the presence or absence of attendant *circumstances*, and sometimes require that the necessary conduct produce certain *results*. For example, as to circumstances, ... bigamy requires a previous marriage, statutory rape that the [victim] be underage .... Perhaps we might say that in criminal homicide and bat-

tery an attendant circumstance necessary for guilt is the absence of any justification or excuse.

> In respect to the requirement of a result, some crimes are so worded that a bad result is needed for commission of the crime. For instance, criminal homicide requires the death of a human being, battery the injury of such a person, arson the burning of property ....

1 Wayne R. LaFave, *Substantive Criminal Law* § 1.2(c) (2d ed.2003) (emphasis in original).

a member of that person's immediate family, or someone with whom that person has or has had a continuing relationship *to suffer serious emotional distress.*

(emphasis added).

This form of the stalking offense does not contain the "credible threat" element. Rather, it focuses on behavior and provides that a stalker commits a crime if he or she repeatedly follows, approaches, places under surveillance, or communicates with a victim in a manner that would cause a reasonable person to suffer serious emotional distress and the defendant's conduct causes the victim serious emotional distress.

At the same time it adopted section 18–9–111(4)(b)(III), the legislature adopted an extensive statement of purpose:

The general assembly hereby finds and declares that stalking is a serious problem in this state and nationwide. Although stalking often involves persons who have had an intimate relationship with one another, it can also involve persons who have little or no past relationship. A stalker will often maintain strong, unshakable, and irrational emotional feelings for his or her victim, and may likewise believe that the victim either returns these feelings of affection or will do so if the stalker is persistent enough. Further, the stalker often maintains this belief, despite a trivial or nonexistent basis for it and despite rejection, lack of reciprocation, efforts to restrict or avoid the stalker, and other facts that conflict with this belief.... Because stalking involves highly inappropriate intensity, persistence, and possessiveness, it entails great unpredictability and creates great stress and fear for the victim. Stalking involves severe intrusions on the victim's personal privacy and autonomy, with an immediate and long-lasting impact on quality of life as well as risks to security and safety of the victim and persons close to the victim, even in the absence of express threats of physical harm. The general assembly hereby recognizes the seriousness posed by stalking and adopts the provisions of this subsection (4) and subsections (5) and (6) of this section with the goal of encouraging and authorizing effec-

tive intervention before stalking can escalate into behavior that has even more serious consequences.

§ 18–9–111(4)(a), C.R.S. (2005); 1999 Colo. Sess. Laws, Ch. 215, sec. 1, at 792–93, 800.

This addition of section 18–9–111(4)(b)(III) and the accompanying legislative declaration of policy accorded with a national trend recognizing that stalking (1) was more prevalent than previously thought and (2) did not always entail concrete threats to a victim's physical safety.

In 1998, the United States Department of Justice in conjunction with the National Center for Disease Control and Prevention reported the results of the "first-ever national study on stalking." Patricia Tjaden & Nancy Thoennes, *Stalking in America: Findings from the National Institute Violence Against Women Survey,* RES. IN BRIEF (Nat'l Inst. of Just. & Ctrs. for Disease Control & Prevention), April 1998, at 1, *available at* http://www. ncjrs.org/ pdffiles/ 169592.pdf. According to the survey, 8% of women and 2% of men had been stalked at some point in their lifetime. *Id.* at 2. Seventy-eight percent of stalking victims were female and 87% of stalking perpetrators were male. *Id.* Twenty-three percent of female victims and 36% of male victims were stalked by strangers. *Id.* Women were more likely than men to report that their stalkers followed them, spied on them, or stood outside their homes, places of business, or places of recreational activity. *Id.* at 7. Approximately equal percentages of men and women reported that stalkers sent them unwanted correspondence, vandalized property, or killed or threatened to kill family pets. *Id.*

The report concluded that state anti-stalking statutes restricting the crime to "credible threat" circumstances were "ill-advised" because, even in the absence of a credible threat, victims can experience great fear as a result of the perpetrator's conduct. "[S]talking victims in [the] survey were either very frightened of their assailant's behavior or feared their assailant would seriously harm or kill them or someone close to them," but less than half the victims surveyed reported being directly threatened by their stalker. *Id.* at 7–8.

This finding shows that stalkers do not always threaten their victim verbally or in writing; more often they engage in a course of conduct that, taken in context, causes a reasonable person to feel fearful.

*Id.* at 8.

Based on the wording of section 18–9–111(4)(b)(III) and the accompanying legislative statement of policy, we determine that the General Assembly added in 1999 a new provision that defined the offense of stalking that did not include the credible threat requirement and does not require that the stalker be aware his or her conduct would cause serious emotional distress to a reasonable person.

## C.

### "Knowingly" Mens Rea Under Section 18–9–111(4)(b)(III)

#### 1. Legislative Intent

The General Assembly enacted section 18–9–111(4)(b)(III) soon after we construed, upheld, and applied in the face of a constitutional challenge for overbreadth and vagueness a credible threat stalking provision in *People v. Baer*, 973 P.2d 1225, 1231–34 (Colo.1999). In *Baer*, our analysis focused on the objective "reasonable person" standard the legislature employed in describing the proscribed conduct. We observed that the statute took into consideration the objective context in which the credible threat and the related communications were made; as a result, the construct of the word choice created an objective standard obviating the risk that the statute would reach innocuous statements merely because they were directed at an unusually sensitive listener. *Id.* at 1233–34.

Shortly after we announced *Baer*, the General Assembly added to the harassment by stalking statute both the serious emotional distress provision and the accompanying legislative declaration we now address: 1999 Colo. Sess. Laws, Ch. 215, sec. 1, at 792–93, 800.

The language the legislature chose to use is plain. The statutory phraseology "in a manner that would cause a reasonable person to suffer serious emotional distress and does cause that person ... to suffer serious emotional distress" relates (1) the context of defendant's acts—utilizing a reasonable person standard—to the proscribed conduct of "[r]epeatedly follows, approaches, contacts, places under surveillance, or makes any form of communication with that person" and (2) the actual effect the victim suffered because of that conduct.

We presume that the General Assembly is aware of our construction of a statute when it proceeds to enact subsequent legislation. *People v. Swain*, 959 P.2d 426, 430–31 (Colo.1998) ("Under an established rule of statutory construction, the legislature is presumed, by virtue of its action in amending a previously construed statute without changing the portion that was construed, to have accepted and ratified the prior judicial construction."); *Vaughan v. McMinn*, 945 P.2d 404, 409 (Colo.1997) ("The legislature is presumed to be aware of the judicial precedent in an area of law when it legislates in that area."); *Tompkins v. DeLeon*, 197 Colo. 569, 571, 595 P.2d 242, 243–44 (1979) ("When the legislature reenacts or amends a statute and does not change a section previously interpreted by settled judicial construction, it is presumed that it agrees with judicial construction of the statute.").

In adding the harassment by stalking—serious emotional distress provision of section 18–9–111(4)(b)(III), C.R.S. (2005), to the statute, the General Assembly employed language that clearly demonstrates its conscious choice to (1) employ an objective reasonable person standard for the purpose of narrowing the statute's potential reach, so as not to criminalize innocuous acts because they were directed at an unusually sensitive person, and (2) require the prosecution to also prove that the victim actually suffered serious emotional distress.

This choice exhibits the legislature's intent to adopt a statute that would accord with constitutional standards, yet include acts of harassment by stalking that, in the words of the General Assembly's statement of purpose, involve "highly inappropriate intensity, persistence, and possessiveness" and "severe intrusions on the victim's personal privacy

and autonomy, with an immediate and long-lasting impact on quality of life as well as risks to security and safety of the victim." § 18–9–111(4)(a).

Key to the General Assembly's formulation of this offense is that a "stalker will often maintain strong, unshakable, and irrational emotional feelings for his or her victim, and may likewise believe that the victim either returns these feelings of affection or will do so if the stalker is persistent enough." *Id.* A stalker will maintain these feelings in spite of a "trivial or nonexistent basis." *Id.* Ergo, the legislature recognized that the stalker in pursuing the victim may be oblivious to objective reality; he or she may not be aware that the repeated acts engaged in would cause a reasonable person to suffer serious emotional distress.

 The legislature obviously thought it possible, if not likely, that a stalker could and would lose consciousness of the offensive nature of his untoward devoted attention towards the victim. The General Assembly therefore intended that the statute's mens rea "knowingly" would not apply to require that a perpetrator be aware that his or her acts would cause a reasonable person to suffer serious emotional distress.

## 2. Application to this Case

We now turn to the differing trial court's and court of appeals' jury instructions. The court of appeals disapproved of the following instruction on section 18–9–111(4)(b)(III) charge that the trial court in this case delivered to the jury:

1. That the defendant,
2. In the State of Colorado, at or about the date and place charged
3. knowingly, repeatedly followed, approached, contacted, placed under surveillance, or made any communication with another person
4. in a manner that would cause a reasonable person to suffer serious emotional distress
5. and caused that person to suffer serious emotional distress
6. and the defendant was convicted of the offense of Harassment by Stalking—

Emotional Distress within seven years prior to this offense.

The court of appeals first struck the sixth phrase of this instruction, reversed both convictions, and remanded for retrial because "the trial court erred in admitting evidence of [another stalking] conviction and instructing the jury that it was an element of harassment by stalking, section 18–9–111(4)(b)(I), (III), a class 4 felony." *People v. Cross*, 114 P.3d 1, 4 (Colo.App.2004). The court of appeals then altered the trial court's instruction for purposes of a new trial on remand, by applying "knowingly" to all elements of section 18–9–111(4)(b)(III) as follows:

1. That the defendant,
2. In the State of Colorado, at or about the date and place charged
3. knowingly, repeatedly followed, approached, contacted, placed under surveillance, or made any communication with another person
4. in a manner *such that he was aware that his conduct was practically certain to* cause a reasonable person to suffer serious emotional distress
5. *and caused* that person to suffer serious emotional distress.

*Cross*, 114 P.3d at 9 (emphasis added).

Although "knowingly" presumptively applies to every element of a statute, this general rule contains an exception that applies to this case. § 18–1–503(4), C.R.S. (2005); *People v. Coleby*, 34 P.3d 422, 424 (Colo.2001). The trial court's instruction possesses the virtue of utilizing the statute's actual language. In the face of section 18–9–111(4)(b)(III)'s actual wording and the accompanying statement of legislative intent, the court of appeals' decision to inject "knowingly" before every element of the section cannot stand.

The General Assembly clearly intended otherwise. Applying "knowingly" to the phrase "in a manner that would cause a reasonable person to suffer serious emotional distress" is untenable because it injects a subjective standard where the legislature clearly specified an objective inquiry. *See People v. Randall*, 711 P.2d 689, 692–93

(Colo.1985) (holding that because indecent exposure statute described circumstance with phrase "under circumstances in which such conduct is likely to cause affront or alarm to the other person," the defendant need not be aware of victim's reaction); *VanMeveren v. County Court*, 191 Colo. 201, 204, 206, 551 P.2d 716, 719, 720 (Colo.1976) (holding that because harassment statute used the phrase "in a manner likely to provoke a violent or disorderly response," legislature intended objective test).

The phrase "in a manner that would cause a reasonable person to suffer serious emotional distress" states an objective standard. *See People v. Baer*, 973 P.2d 1225, 1233 (Colo.1999) (stating that "reasonable person standard" in another stalking section, § 18–9–111(4)(b)(I), is objective).

Our precedent establishes that although the "distinction between an awareness of one's conduct or circumstance, on the one hand, and an awareness of the result of one's conduct, on the other, at times may be a subtle one, it is a distinction recognized by the Colorado Criminal Code itself." *Copeland v. People*, 2 P.3d 1283, 1286 (Colo.2000); *People v. Noble*, 635 P.2d 203, 210 (Colo. 1981). Adding "knowingly" to modify "in a manner that would cause a reasonable person to suffer serious emotional distress" would lead to the absurd result that a defendant who is so out-of-touch with the objective reality of his behavior would escape criminal liability for his or her conduct. This the legislature surely did not intend.

As the legislature feared, Cross's conduct points out that stalkers can maintain an irrational belief that the result of their conduct will be the love and affection of their victims. § 18–9–111(4)(a), C.R.S. (2005); *see also An Act Concerning Substantive Changes for the Strengthening of the Criminal Laws*, 62nd Gen. Assembly of Colo. (1999) (statement of Ray Slaughter, Colo. District Attorneys Council) (audio recording of Apr. 22, 1999) (describing "erotomania" stalking); *People v. Neuzil*, 589 N.W.2d 708, 712 (Iowa 1999) ("Here, for example, Neuzil sought to convince the jury that his conduct stemmed from his love for Sheetz .... To excuse his harassing conduct on these grounds would ef-fectively negate the purpose of the anti-stalking statute—to enable law enforcement to get involved in a harassing situation before physical confrontation results.").

In enacting section 18–9–111(4)(b)(III) the General Assembly defined a form of the crime of stalking that does not require a credible threat or that the defendant be aware that his repeated acts would cause a reasonable person to suffer serious emotional distress. Cross contends that, to avoid constitutional vagueness and overbreadth problems with the statute, we must construe it to require defendants to be aware their conduct would cause a reasonable person to suffer serious emotional distress. We disagree.

In regard to the vagueness challenge, the presence of the objective standard in section 18–9–111(4)(b)(III) allows citizens of common intelligence to gauge their behavior and serves to limit application of the statute so as to avoid arbitrary enforcement. *Baer*, 973 P.2d at 1233–34; *People v. Prante*, 177 Colo. 243, 249, 493 P.2d 1083, 1085 (1972) (stating that "the fact that a penal statue is framed in a way such as to require a jury to determine a question of reasonableness does not make it too vague to afford a practical guide to acceptable behavior").

Under the statute, the prosecution is required to prove beyond a reasonable doubt that the defendant's conduct would cause a reasonable person to suffer serious emotional distress and the conduct actually caused the victim to suffer such distress. Even though a person is not required to actually know that his or her acts towards the victim are not innocuous, section 18–9–111(4)(b)(III) is not vague because a reasonable person could know that the only acts prohibited are those that would cause a reasonable person to suffer serious emotional distress and do in fact cause such distress. Thus, the acts are connected to both an objective standard and a palpable result, and the statute does not criminalize innocuous behavior. *Baer*, 973 P.2d at 1233–34. This is plainly not a case in which no standard of conduct is specified, *id.* at 1225, and our construction of the statute does not make the statute unconstitutionally vague. The statute does not include harm-

less conduct and does not permit unfettered jury discretion to find conduct criminal.

In regard to the overbreadth challenge, a statute is not unconstitutionally overbroad simply because it could possibly be applied in some unconstitutional manner. *Id.* at 1231; *People v. Hickman*, 988 P.2d 628, 635 (Colo.1999) ("If a statute encompasses protected speech but is not substantially overbroad, then whatever overbreadth may exist should be resolved on a case-by-case basis."). Cross fails to show that the statute sweeps so comprehensively as to include a substantial amount of constitutionally protected speech, or that his repeated conduct upon which the jury based its verdict falls within the zone of constitutionally protected speech. *Baer*, 973 P.2d at 1231.

The legislature's purpose was to criminalize conduct that involves a "severe intrusion upon the victim's personal privacy and autonomy, with an immediate and long-lasting impact on quality of life as well as risks to security and safety of the victim and persons close to the victim, even in the absence of express threats of physical harm." § 18–9–111(4)(a), C.R.S. (2005). Thus, the acts the legislature intended to address involve "inappropriate intensity, persistence, and possessiveness" that "creat[ ] great stress and fear for the victim." *Id.* In this case, Cross placed his victim under surveillance, approached her, and contacted her in a manner that would cause a reasonable person to suffer serious emotional distress, and she suffered such distress. These acts are not harmless, are within the statute's proscription, and are not protected by the First Amendment. *Baer*, 973 P.2d at 1231–32.

## III.

Accordingly, we reverse the judgment of the court of appeals on the jury instruction issue, and we return this case to the court of appeals for remand to the trial court and retrial consistent with this opinion.