JUDGE DUNN, concurring in part and dissenting in part.
¶ 47 Using a cancelled debit card and a false override code, defendant James Edward Patton convinced Ultimate Electronics to approve the debit purchase of electronic equipment worth over $8000. The evidence of Patton's criminal transaction was fairly overwhelming, with one caveat. Patton was not notified in person or in writing that the debit card he used to accomplish his financial shenanigans was cancelled, as required by the statute.[1] In the absence of in person or in writing notice, the majority concludes telephonic notice sufficed. Because the General Assembly did not authorize telephonic notice, I respectfully dissent from Part II.C, the portion of the majority's opinion concluding otherwise.
¶ 48 A person commits unauthorized use of a financial transaction device when he uses a financial device to obtain property, with the intent to defraud, and "with notice" that the device "has expired, has been revoked, or has been cancelled." § 18-5-702(1)(a), C.R.S. 2016. For purposes of this statute, notice "includes either notice given in person or notice given in writing to the account holder." § 18-5-702(2). Put simply then, an account holder must be notified in one of two specified ways that his debit card (or other financial device) has been cancelled.
¶ 49 Despite this, the majority adds a third way-by telephone-to the statute.[2] To do *1162 so, the majority focuses its analysis on the word "includes" in section 18-5-702(2). Reading this term in isolation, it theorizes that since "includes" is an expansive term, the General Assembly intended to extend notice beyond the methods specified in the statute.
¶ 50 Standing alone, I agree that the word "includes" is broad. But it is not alone here. The General Assembly instead chose to restrict the breadth of the term "includes" with the limiting words "either" and "or." And when read together, these latter terms place parameters on the notice provision's breadth. See Van Patten v. LaPorta , 148 A.D.2d 858, 539 N.Y.S.2d 132, 134 (N.Y. App. Div. 1989) ("The use of 'either' as a function word before two or more coordinate words, phrases or clauses joined by the disjunctive 'or' indicates that what immediately follows is the first of two or more alternatives."); People v. Meyers , 119 N.Y.S.2d 474, 476 (N.Y. Gen. Sess. 1953) ("The language 'either' 'or' is exclusive...."); see also Shafor v. Pub. Utils. Comm'n , 94 Ohio St. 230, 113 N.E. 809, 810 (1916) ("[T]he common and primary meaning of the word [either] is 'being one or the other of two'...."); Branch v. Branch , 188 Pa.Super. 587, 149 A.2d 573, 575 (1959) (same); Webster's Third New Int'l Dictionary 728 (2002).
¶ 51 Taking the General Assembly at its word leads me to conclude that notice "includes" that given "either" in person "or" in writing. § 18-5-702(2) ; see People v. Nelson , 2015 COA 123, ¶ 6, 369 P.3d 733 (explaining that we must give statutory words their plain and ordinary meaning and interpret the statute to give effect to all of its parts). I see no other interpretation that gives meaning to each of the words chosen by the General Assembly.
¶ 52 Consider the majority's interpretation. It gives effect to the terms "includes" and "or," but it reads "either" out of the statute. And in doing so it reads telephonic notice into the statute. We, of course, are not at liberty to add words to or subtract words from the statute. E.g. , People v. Cross , 127 P.3d 71, 73 (Colo. 2006). Rather, when the statute is clear, we take it as we find it, presuming the General Assembly "has knowledge of the legal import of the words it uses." People v. Guenther , 740 P.2d 971, 976 (Colo. 1987).
¶ 53 Beyond these interpretive problems, I am persuaded that the General Assembly intended to limit notice to "in person" or "in writing" for another reason. Had the General Assembly intended to allow telephonic notice, it knew how to do so. After all, it has included telephonic notice in other statutes. See § 7-101-402(2), C.R.S. 2016 ("Notice may be given in person; by telephone, telegraph, teletype, electronically transmitted facsimile, or other form of wire or wireless communication; or by mail or private carrier."); § 13-71-116, C.R.S. 2016 ("A jury commissioner shall notify the juror by telephone or in writing...."); § 25-27-106(2)(b)(II)(B), C.R.S. 2016 ("[T]he department shall notify the licensee in writing, by telephone, or in person...."). That it did not do so in the unauthorized use of a financial transaction device statute tells me that it did not intend to do so. See People v. Benavidez , 222 P.3d 391, 394 (Colo. App. 2009).[3]
¶ 54 To be sure, interpreting the statute as written results in the vacation of Patton's conviction, which, given the evidence, is not particularly palatable. Even so, it is for the General Assembly-not this court-to revise the notice provision of the unauthorized use of a financial transaction device statute, if, in fact, it intends to allow telephonic notice to suffice. Our job begins and ends with applying the statute as written.
¶ 55 Because Patton did not receive notice either "in person" or "in writing" that the debit card he used was expired, revoked, or cancelled, I respectfully dissent from that portion of the opinion affirming Patton's conviction for unauthorized use of a financial *1163 transaction device. I therefore would not reach the question of the propriety of Patton's sentence on that count.

A bank representative testified that although it was the bank's normal practice to mail and/or e-mail notification of the cancellation to the account holder, no record existed that this practice was followed here.

Although a bank representative testified that during a prior telephone call (unrelated to the electronics transaction) a bank employee would have told Patton that the debit card was cancelled, no evidence was presented that Patton was actually notified during this telephone call.

Recognizing perhaps that notice was outside the specified statutory methods, the People alternatively suggest that Patton received sufficient in-person notification when the salesperson told him that his debit card was declined. No evidence, however, suggests that the salesperson said that the card had expired, been revoked, or been cancelled. And a debit card may be declined for other reasons.