COLORADO COURT OF APPEALS                                   **2017COA126**

Court of Appeals No. 16CA1648
Office of Administrative Courts Case No. OS 2016-0009

Campaign Integrity Watchdog,

Petitioner-Appellee,

v.

Colorado Republican Committee,

Respondent-Appellant.

ORDER REVERSED

Division I
Opinion by JUDGE TAUBMAN
Lichtenstein and Carparelli*, JJ., concur

Announced October 5, 2017

Matthew Arnold, Authorized Representative of Campaign Integrity Watchdog

Brownstein Hyatt Farber Schreck, LLP, Christopher O. Murray, Denver,
Colorado, for Respondent-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2017.

¶ 1    In this campaign finance case, the Colorado Republican Committee (CRC) appeals part of a final agency decision which determined that it improperly failed to report three payments for vendor tables at its 2016 Republican Party assembly and convention.[1]  Because we conclude that these payments were not political contributions, we reverse that part of the order imposing a fine and sanctions against CRC for failing to report the payments. We do not review, and thus issue no opinion on, that part of the agency decision CRC does not appeal.

## I.  Background

¶ 2    In April 2016, CRC held its convention to nominate candidates for state and federal offices and to elect at-large delegates and alternates to the 2016 Republican National Convention.  In connection with the convention, CRC sold vendor tables for a minimum of $350 each.[2]  Although the record is not clear, these vendor tables apparently were used by individuals and

---

[1] For ease of reference, we will refer to this simply as "the convention."

[2] Evidence was presented at the hearing indicating that the tables could cost more than $350, depending on the size of the table and if the payor was an affiliated organization like a county division of the Republican Party, or if the payor was an outside group.

organizations to promote campaigns, advertise, and share information. Those who purchased tables could decorate the tables and provide literature to convention delegates and visitors. The record also indicates that CRC sold some tables to commercial vendors.

¶ 3     Three payments to CRC for these tables are at issue. The first table was purchased by Jess Loban, a Republican candidate for the state senate. CRC deposited his payment of $350 into its federal operations account and reported it in its disclosures to the Federal Election Commission (FEC). The second and third tables were purchased by the Party of Choice, LLC. The record does not provide any more information about the LLC. CRC deposited the Party of Choice's two payments totaling $700 into its state operations account and disclosed them on its state report of contributions and expenditures.

¶ 4     In May 2016, Campaign Integrity Watchdog (CIW), through Matt Arnold, its authorized representative[3], filed a complaint with

---

[3] Although Matt Arnold is not an attorney, he may represent CIW in this case because he has established that he has met the requirements of section 13-1-127(2), C.R.S. 2017. *See Campaign*

the secretary of state. As relevant to this appeal, CIW argued that CRC failed to report in its state report of contributions and expenditures the payment from Loban as a contribution. It also argued that, with respect to the payments from the Party of Choice, CRC failed to follow all of the reporting requirements for a contribution from an LLC, including failure to file what is known as an LLC "affirmation" pursuant to section 1-45-103.7, C.R.S. 2017.[4]

¶ 5    An administrative law judge (ALJ) held a hearing on these and other issues in August 2016. During the hearing, CRC argued that the three payments were not reportable contributions under the Fair Campaign Practices Act (FCPA), sections 1-45-101 to -118, C.R.S. 2017. In his final order, the ALJ ruled that (1) the three payments by Loban and the Party of Choice were all reportable contributions under state law; (2) CRC did not properly disclose these contributions; (3) CRC must pay a $4600 fine for failure to

_____

*Integrity Watchdog v. Coloradans for a Better Future*, 2016 COA 51, ¶ 2 n.1, ___ P.3d ___, ___ n.1 (*cert. granted* Sept. 12, 2016).

[4] When a political party receives a reportable state contribution from an LLC, the LLC must prepare an affirmation containing the names of the LLC members and apportionment of the contribution, and the party must file the affirmation when it reports the contribution. *See* § 1-45-103.7(5)(d), C.R.S. 2017.

3

disclose these contributions; and (4) CRC must file amended reports of contributions and expenditures and return those contributions. Consequently, he assessed a fine and a sanction in the alternative against CRC and ordered that CRC amend its reports of contributions and return the contributions.

## II. Interpretation of Section 1-45-103(6)(b) of the FCPA

¶ 6 CRC contends that the ALJ erred in determining that the three payments for vendor tables at the convention were reportable contributions under state law and not properly reported by CRC. We agree.

¶ 7 At the hearing, Shana Kohn Banberger, the Executive Director of CRC, testified that vendors purchase tables at the convention to present a display to roughly 4000 delegates and around 2000 to 3000 alternates — an attendance of roughly 6000 to 7000 people. Banberger also stated that vendor tables typically sell out.

¶ 8 Banberger further attested that CRC did not report these payments for the vendor tables as contributions because the payments were "a fee for a service. . . . It was a fee for the vendor tables, as they stated on their check."

## A. Standard of Review

¶ 9　As a matter of statutory interpretation, we review de novo whether payments to a political party are contributions under the Colorado Constitution and state law. *Campaign Integrity Watchdog v. Coloradans for a Better Future*, 2016 COA 51, ¶ 16, ___ P.3d ___, ___ (*cert. granted* Sept. 12, 2016). We also review de novo an administrative agency's conclusions of law. *Id.*

## B. Applicable Law

¶ 10　As pertinent here, section 1-45-108(1)(a)(I), C.R.S. 2017, requires political committees to report contributions of twenty dollars or more that they receive. It also requires them to report expenditures and obligations.

¶ 11　Under the definitions section of the FCPA, "contribution" has "the same meaning as set forth in section 2(5) of article XXVIII of the state constitution." § 1-45-103(6)(a), C.R.S. 2017. The Colorado Constitution defines "contribution" broadly as "[t]he payment, loan, pledge, gift, or advance of money, or guarantee of a loan, made to any candidate committee, issue committee, political committee, small donor committee, or political party." Colo. Const.

art. XXVIII, § 2(5)(a)(I). However, section 1-45-103(6)(b) adds the following:

> "Contribution" includes, with regard to a contribution for which the contributor receives compensation or consideration of less than equivalent value to such contribution, including, but not limited to, items of perishable or nonpermanent value, goods, supplies, services, or participation in a campaign-related event, an amount equal to the value in excess of such compensation or consideration as determined by the candidate committee.

§ 1-45-103(6)(b).

¶ 12　　When interpreting a statute or a constitutional amendment, we must first determine whether it has a plain and unambiguous meaning. *Campaign Integrity Watchdog*, ¶ 17, ___ P.3d at ___. "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* at ¶ 18, ___ P.3d at ___ (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)). We read the statutory scheme as a whole to give "consistent, harmonious, and sensible effect to all parts of the statute." *Id.* (quoting *Salazar v. Indus. Claim Appeals Office*, 10 P.3d 666, 667 (Colo. App. 2000)); *see also People v. Dist.*

*Court*, 713 P.2d 918, 921 (Colo. 1986).  We will not adopt a statutory interpretation that leads to an illogical or absurd result or is at odds with the legislative scheme.  *People v. Cross*, 127 P.3d 71, 73 (Colo. 2006).  We also reject interpretations that render words or phrases superfluous.  *Id.*

¶ 13     Likewise, when interpreting a constitutional amendment, we must give effect to the electorate's intent in enacting the amendment.  *Campaign Integrity Watchdog*, ¶ 19, ___ P.3d at ___.  We must give words their ordinary and popular meanings to ascertain what the voters believed the amendment to mean when they adopted it.  *Id.*  We also must interpret constitutional amendments and statutory provisions together.  *See id.* at ¶ 38, ___ P.3d at ___.[5]

### C.  Analysis

#### 1.  Interpretation of Section 1-45-103(6)(b)

¶ 14     The ALJ correctly noted that section 1-45-103(6)(b) "speaks only of contributions valued by the 'candidate committees,'" and

---

[5] CIW is not alleging that the FCPA is unconstitutional for improperly narrowing section 2(5) of article XXVIII of the Colorado Constitution.

posed the question of whether section 1-45-103(6)(b) applies to political committees such as CRC. We conclude that section 1-45-103(6)(b) applies to all contributions "for which the contributor receives compensation or consideration."

¶ 15    Section 1-45-103(6)(a) states that "'contribution' shall have the same meaning as set forth in section 2(5) of article XXVIII of the state constitution." The statute begins by incorporating the constitutional definitions of "contribution," which applies, as relevant here, to payments made to "candidate committee[s], issue committee[s], political committee[s], small donor committee[s], or political part[ies]." Colo. Const. art. XXVIII, § 2(5)(a)(I).

¶ 16    According to section (2)(13) Article XXVIII of the Colorado Constitution, a "'[p]olitical party' includes affiliated party organizations at the state, county, and election district levels, and all such affiliates are considered to be a single entity for the purposes of this article." The CRC, as a state-level affiliated party organization of the Republican Party, qualifies as a "political party" to which this section of the Colorado Constitution and the related statutes apply.

¶ 17    Section 1-45-103(6)(b) pertains to the amount of a contribution when "the contributor receives compensation or consideration." It provides that the amount of the contribution is the value of the contributor's payment in excess of the compensation or consideration the contributor receives. For example, it states that the compensation or consideration might be "items of perishable or nonpermanent value, goods, supplies, services, or participation in a campaign-related event." *Id.* In this regard, the statute permits a candidate committee — but not other entities — to determine the value of such compensation or consideration.

¶ 18    We conclude that interpreting section 1-45-103(6)(b) as applying only to payments made to candidate committees that have determined the value of the goods and services provided while excluding, as relevant here, payments made to political parties would lead to an absurd result. *See Dist. Court,* 713 P.2d at 921. It is illogical that the General Assembly intended "contribution" to

enable only candidate committees to determine the value of goods and services provided.[6]

¶ 19    Accordingly, we conclude that section 1-45-103(6)(b) applies to the payments to CRC at issue here.

¶ 20    While the Colorado Constitution broadly defines a "contribution," the plain language of the statute addresses the determination of the contribution amount when the contributor receives something of value in the transaction. When a contributor pays CRC for a good or service, and the amount paid is greater than

_____

[6] We have reviewed the legislative history of the FCPA and have found no explanation as to why section 1-45-103(6)(b), C.R.S. 2017, refers only to candidate committees. Specifically, we reviewed the legislative history of H.B. 1194, 62d Gen. Assemb., 2d Reg. Sess. (Mar. 15, 2000) (adding the definition of "contribution" now codified at section 1-45-103(6)(b)); H.B. 1132, 64th Gen. Assemb., 1st Reg. Sess. (June 3, 2003) (recreating and re-enacting the FCPA in response to the 2002 enactment of Article XXVIII by voter initiative); and H.B. 1074, 66th Gen. Assemb., 1st Reg. Sess. (July 1, 2007) (adding the definition of "contribution" codified at section 1-45-103(6)(c)). Nothing in the legislative history we reviewed suggests that section 1-45-103(6)(b) applies only to candidate committees and, as explained above, we conclude that to read it that way would lead to an absurd result. *See Burnett v. State Dep't of Nat. Res.*, 2015 CO 19, ¶ 39, 346 P.3d 1005, 1012 (looking to legislative history before concluding that an interpretation of a statute proposed by a party would produce absurd results).

its value, only the amount paid in excess of the value is considered a "contribution."

¶ 21    The ALJ rejected CRC's interpretation and instead relied on the broader definition of "contribution" found in article XXVIII and adopted by section 1-45-103(6)(a).  However, to ignore the plain language of section 1-45-103(6)(b) would render it superfluous.  *See Cross,* 127 P.3d at 73; *see also Dist. Court,* 713 P.2d at 921 ("If separate clauses within a statute may be reconciled by one construction but would conflict under a different interpretation, the construction which results in harmony rather than inconsistency should be adopted."); *Campaign Integrity Watchdog,* ¶ 18, ___ P.3d at ___.

¶ 22    Section 1-45-103(6)(a) supports our conclusion because it states that the FCPA defines "contribution" the same as article XXVIII, in addition to identifying an exception for payments that exceed the value of those goods and services.  *See* § 1-45-103(6)(a), (b).  Further, basic rules of statutory construction dictate that a more specific provision prevails over a general provision.  § 2-4-205, C.R.S. 2017; *see also Campaign Integrity Watchdog,* ¶ 38, ___ P.3d at ___.

¶ 23     CIW asserts that the federal and state definitions of "contribution" are indistinguishable.  We disagree.  The federal definition broadly considers all "payments" as contributions, while the state definition indicates that parts of some payments are not included in the definition of "contribution" found in the Colorado Constitution.

¶ 24     Thus, we conclude that the difference between the federal and state definitions of "contribution" indicates that only the state definition excludes the amounts paid equal to the value of goods and services.  In contrast, the Federal Election Campaign Act provides only two broad definitions of "contribution":

> (i) any gift, subscription, loan, advance, or deposit of money or anything of value made by any person for the purpose of influencing any election for Federal office; or
>
> (ii) the payment by any person of compensation for the personal services of another person which are rendered to a political committee without charge for any purpose.

52 U.S.C. § 30101(8)(A) (2012).  The federal definition does not mention anything related to contributions for which the contributor receives compensation or consideration.  However, section 1-45-

12

103(6)(b) explains that the amount of a contribution is the difference between the payment made by the contributor and the value the contributor received. Unlike the federal law, the state statute thus addresses situations in which a contributor receives something of value as compensation or consideration.

¶ 25     Federal case law may be instructive in interpreting state law when the state law is modeled after a federal law. *See Flood v. Mercantile Adjustment Bureau, LLC*, 176 P.3d 769, 772 (Colo. 2008). However, the corollary is that where state and federal laws differ, we are not required to follow federal law in construing the state statutory scheme. *See Nicholas v. N. Colo. Med. Ctr., Inc.*, 902 P.2d 462 (Colo. App. 1995).

¶ 26     Thus, contrary to CIW's assertion that the definitions in the state and federal laws are indistinguishable, we conclude that the General Assembly intended to differentiate between those payments for services that equal the value of those goods or services, which are not "contributions," and those made in excess, which are.[7]

---

[7] Based on the different federal and state definitions of "contribution," CRC reported the payments for the Loban vendor table at issue to the FEC, but not to the state.

¶ 27    Finally, the Colorado Secretary of State's Campaign and Political Finance Manual reinforces our conclusion regarding the interpretation of section 1-45-103(6)(b).  The manual states that

> [a]ny amount paid for a ticket to a fundraising event in excess of the value of a meal or other amenities provided (which is typically stated) constitutes a contribution to the organization benefitting from the event.  For example, if a ticket to an event is $100 and the meal costs $25, the ticket purchaser makes a contribution of $75 to the entity hosting the event.

Colorado Secretary of State, Colorado Campaign and Political Finance Manual 33 (October 2016), https://perma.cc/9CYW-C9HU.  The manual, while not binding authority, demonstrates that any payment made in excess of the value of a good or service is considered a "contribution."  *See Bd. of Cty. Comm'rs v. Colo. Pub. Utils. Comm'n,* 157 P.3d 1083, 1088 (Colo. 2007) ("We may consider and defer to an agency's interpretation of its own enabling statute and regulations the agency has promulgated.").

¶ 28    Accordingly, we conclude that, under the plain language of section 1-45-103(6)(b), political parties are required to report only that portion of payments for services that exceeds the value of the services rendered.

## 2. Application of Section 1-45-103(6)(b)

¶ 29    Based on the plain meaning of section 1-45-103(6)(b), and applying it to political parties, including CRC, we conclude that the ALJ erred in limiting his analysis to the definition of "contribution" found in article XXVIII and determining that the payments by Loban and the Party of Choice for vendor tables were reportable contributions.

¶ 30    Here, CRC asserted that the value of the vendor tables, $350, was reasonable because the value the contributor received was participation in the convention that afforded an opportunity to display information to 6000 to 7000 convention attendees and because tables often sold out.  The ALJ disregarded this argument and concluded that regardless of any potential difference between the amount paid and the actual value, any payments of this nature must be reportable contributions to prevent organizations from "shield[ing] all such exchanges from view."  However, the ALJ's interpretation "relied on one part of the constitutional definition of contribution while ignoring the [statutory] definition." *Campaign Integrity Watchdog*, ¶ 38, ___ P.3d at ___.  This was error.

15

¶ 31     The amount of a "contribution" includes only payments made in excess of the value received by the contributor. CIW, as the complainant seeking an order of violation, had the burden to show that the three payments at issue were reportable contributions under the statute. It thus had to provide evidence — pursuant to section 1-45-103(6)(b) — that the value of the vendor tables was actually less than the $350 CRC charged. *See* Colo. Const. art. XXVIII, § 2(5)(a)(III); § 24-4-105(7), C.R.S. 2017 ("[T]he proponent of an order shall have the burden of proof."). Because CIW presented no evidence contrary to CRC's assertion, no basis exists to conclude that the payments by Loban and the Party of Choice are reportable contributions under section 1-45-103.

¶ 32     CIW nevertheless contends that the payments were otherwise reportable. We address and reject its contentions.

¶ 33     Relying on the Internal Revenue Code and Colorado law, CIW first contends that CRC, as a tax-exempt entity, cannot engage in the commercial sale of goods or services because financial transactions with political entities "are defined strictly in terms of 'contributions' and 'expenditures.'" *See* 26 U.S.C. § 527 (2012). However, this section actually states that political parties are

"organized and operated *primarily* for the purpose of directly or indirectly accepting contributions or making expenditures, or both . . . ." 26 U.S.C. § 527(e)(1) (emphasis added).  It does not say that political parties are organized *exclusively* to accept contributions and to make expenditures.

¶ 34     CIW next contends that these payments could not have been payment for "services" as CRC contends, because Loban and the Party of Choice were not paying for the tables, but rather for access to the convention, an entirely political function, and not a "service" activity.  However, the exchange between the payors and CRC was still a "service."  Paying for a vendor table was an opportunity to display information in front of approximately 6000 to 7000 people.  By paying CRC, Loban and the Party of Choice benefited; there was an exchange of value between the payors and CRC.  *See* Black's Law Dictionary 1576 (10th ed. 2014) ("Service" is "[l]abor performed in the interest or under the direction of others; specif., the performance of some useful act or series of acts for the benefit of another, usu. for a fee.").

¶ 35     As stated above, the relevant inquiry was then whether the value of the service (the opportunity to display information at a

vendor table at the convention) was less than the $350 payment for it, because only those services that are worth less than the amount paid are reportable contributions. Because CIW presented no evidence on this issue, it cannot prevail. *See* Colo. Const. art. XXVIII, § 2(5)(a)(III); § 24-4-105(7).

¶ 36 CIW argues in response that the value of such vendor tables was incalculable; however, the practice of selling vendor tables at state assemblies and conventions is not limited to the CRC. CIW could have presented evidence of the typical rates charged for such display tables at other political conventions or other events to determine if such a price was its actual value. However, CIW did not do so.

¶ 37 CIW next contends that the "central holding" of another division of this court in *Campaign Integrity Watchdog,* ¶ 38, ___ P.3d at ___, is that any payment received by a political party is a contribution, irrespective of the purpose behind the payment. However, the holding in that case was narrower than CIW argues. Instead, the division held that a political organization is required to report as a contribution the value of legal services it received, even if such services were gifts, services (where less than equivalent

18

value was received), or pro bono services. *Campaign Integrity Watchdog*, ¶¶ 40-41, ___ P.3d at ___. This was so even if the legal services were not given to promote a candidate's nomination or election. *Id.* That decision is not analogous to the issues here, because there, the political organization paid contributors for their services whereas, here, the contributor paid a political organization (CRC) for the service it provided.

¶ 38 Moreover, *Campaign Integrity Watchdog* did not hold that payments that lack an element of gratuity are contributions. Whether a contribution needs an element of gratuity was not before the division, because the division concluded that the "payments" at issue were gratuitous in nature. Thus, the analysis of *Campaign Integrity Watchdog* is consistent with our interpretation in this case. For example, if a political organization received pro bono legal services valued at $2000, it would have to report that contribution as the value received.

¶ 39 Last, CIW contends that CRC was required to report these payments as "other income." *See* Dep't of State Reg. 10.14, 8 Code Colo. Regs. 1505–6. However, the issue of whether the payments are "other income" in the regulations was not alleged by CIW, was

not addressed by the parties or the ALJ at the hearing or in the ALJ's final decision, and did not form the basis for this appeal.

¶ 40 Unless a hearing officer has no authority to address it, an issue not raised before a hearing officer is waived. *Chostner v. Colo. Water Quality Control Comm'n*, 2013 COA 111, ¶ 39, 327 P.3d 290, 298. Because the ALJ had the authority to address this contention, no exceptions apply here. Thus, CIW has waived this argument; therefore, we will not consider it.

¶ 41 Because CIW's arguments are unavailing, we conclude that the ALJ erred in finding that the payments at issue are reportable contributions under state law.

### III. ALJ's Order

¶ 42 CRC contends that the ALJ erred in imposing a $4600 fine for its failure to report Loban's payment and in ordering it to amend its report of contributions and expenditures to include an LLC affirmation for the payments by the Party of Choice, or otherwise to return the payment from the Party of Choice. We agree. Because this part of the ALJ's order was premised on the Party of Choice's payments being contributions — a premise we have rejected — that part of the ALJ's order must be reversed.

¶ 43    CRC also contends that because private enforcement of Colorado's campaign finance laws is unconstitutional, CIW cannot file a private lawsuit against CRC and thus the ALJ had no power to impose fines and sanctions upon CRC.

¶ 44    Because we have concluded that the ALJ erred in determining that the payments by Loban and the Party of Choice were contributions under Colorado law and reverse the order, we need not address whether private enforcement of Colorado's campaign finance laws is unconstitutional.

## IV.  Request for Costs

¶ 45    CIW requested recovery of its costs incurred "due to Respondent-Appellant CRC's substantially frivolous and groundless appeal."  However, because we conclude that CRC prevails on its claims, CIW is not entitled to an award of costs.  *See Valentine v. Mountain States Mut. Cas. Co.*, 252 P.3d 1182, 1188 (Colo. App. 2011).

## V.  Conclusion

¶ 46    Accordingly, the part of the order imposing a fine and sanctions against CRC for failing to disclose the relevant payments is reversed.

JUDGE LICHTENSTEIN and JUDGE CARPARELLI concur.